**Pamela A. LOFTIN, Plaintiff-Appellant,**

v.

**James K. RUSH, Defendant,**

**United States of America,
Garnishee-Appellee.**

No.  84–8828.

United States Court of Appeals,
Eleventh Circuit.

Aug. 2, 1985.

Jerry D. Sanders, Columbus, Ga., for plaintiff-appellant.

Jack Hood, Asst. U.S. Atty., Macon, Ga., for garnishee-appellee.

Before HENDERSON and CLARK, Circuit Judges, and HOFFMAN *, District Judge.

CLARK, Circuit Judge:

This appeal addresses the scope of removal under 28 U.S.C. § 1442(a)(1), and the extent to which Congress waived sovereign immunity under 42 U.S.C. § 659(a) (1982).[1]

## FACTS

Pamela A. Loftin was divorced from James K. Rush in September of 1974. As part of the divorce decree, Rush was obligated to pay child support. He did not do so. As a result, Loftin swore out an Affidavit of Continuing Garnishment in the Muscogee County Superior Court, Georgia, in the amount of $37,966.

The Summons of Garnishment was served on Rush's employer, the United States Navy, on February 7, 1984. It indicated the full amount of the judgment against Rush and advised the Navy it had 45 days to answer. It warned that a failure to answer would render the Navy liable for the full amount of the judgment.

Sixty-nine days later, on April 16, 1984, when the Navy had filed no answer, the Superior Court entered a default judgment against the Navy for $37,966 plus costs. A copy of the judgment was mailed to the Navy and received April 20.

One day after the judgment was entered, on April 17, 1984, the court received a letter from the Navy, explaining that it

---

* Honorable Walter E. Hoffman, U.S. District Judge for the Eastern District of Virginia, sitting by designation.

1. Social Services Amendments of 1974, P.L. 93–647, § 459(a), 88 Stat. 2337, 2357–2358. Under 42 U.S.C. § 659(a), moneys owed by the United States to its employees are subject to a limited garnishment to satisfy child support or alimony obligations.

intended to honor the garnishment but that it could not file an answer until it received pay information from Rush's commanding officer. Two months elapsed. The Navy's answer was filed June 19, 1984, and its first monthly check, in the amount of $456.47 was tendered June 20.

Noticeably angered by the Navy's idiosyncratic time frame, Loftin's counsel wrote the Navy a letter June 19, 1984, calling its attention to the default judgment and informing it that its monthly payments were not acceptable. Counsel threatened to have a Writ of Execution issue against the United States unless the full amount of the judgment—$37,966—was paid into court by July 1, 1984.

The Navy received the letter June 22, 1984. It filed a petition for removal July 9, 1984. Subsequently, on July 10, the Superior Court received the Navy's second monthly check. Roughly three weeks later, August 3, 1984, Loftin filed a motion to remand to Superior Court.

The district court remanded, but not until it had "quashed, nullified and vacated" the default judgment and had dismissed any direct claim Loftin had against the United States. Once the court dismissed the claim and vacated the judgment, it remanded the basic garnishment action to the state court. This appeal followed: Loftin challenges the removal to federal court; the district court's determination that a default judgment could not be sustained against the United States; and the court's remand of the remaining garnishment action to state court.

## EXTENT OF REVIEW

The first issue to be resolved is whether we can review the district court's order dismissing the claim against the United States and remanding the remaining claims to state court. Congress has prohibited appellate review of a federal district court's remand order. Title 28 U.S.C. § 1447(d) (1982) provides unambiguously that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise...." The statute includes a single exception, not apposite here.

In *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), the Supreme Court analyzed 1447(d) and determined that it is to be interpreted as precluding appellate review only where the court remands pursuant to 1447(c).[2] 423 U.S. at 349–52, 96 S.Ct. at 592–93. From *Thermtron* we extrapolated the principle that a failure to cite 1447(c), or mention its buzzwords, does not *per se* give us license to review a remand order. *Division of Archives, History and Records Management, Department of State v. Austin*, 729 F.2d 1292, 1293 (11th Cir.1984); *In re Weaver*, 610 F.2d 335, 337 (5th Cir. 1980); *See In re Merrimack Mutual Fire Insurance Co.*, 587 F.2d 642, 648 (5th Cir. 1978).

An analysis of the district court's order indicates that it remanded the case after it dismissed the federal component, concluding that the garnishment action would be better prosecuted in the state court. The court implied that without the federal component, the case was "removed improvidently and without jurisdiction." *See IMFC Professional Services of Florida, Inc. v. Latin American Home Health, Inc.*, 676 F.2d 152, 160 (5th Cir. Unit B 1982). This implication is adequately supported and remand was appropriate here after the district court decided the federal issue and only non-federal issues remained.[3] *See Thermtron*, 423 U.S. at 352–53, 96 S.Ct. at 593–94; *Armstrong v. Ala-*

---

**2.** 28 U.S.C. § 1447(c) (1982) provides, in relevant part:

If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case....

**3.** The proper way to challenge a remand is by way of writ of mandamus, not appeal. *Therm-*

*tron*, 423 U.S. at 352–53, 96 S.Ct. at 593–94; *Royal v. State Farm Fire & Casualty Co.*, 685 F.2d 124, 126 (5th Cir.1982); *London v. United States Fire Ins. Co.*, 531 F.2d 257, 259 (5th Cir. 1976). We do not decide whether we may review a non-1447(c) remand order as part of a direct appeal where we have independent juris-

*bama Power Co.,* 667 F.2d 1385, 1387 (11th Cir.1982); *Merrimack,* 587 F.2d at 648–49.

■ However, the court's order is not immunized from review. The district court's order was not confined to a simple remand. It vacated a state judgment. Nothing bars our review of this order: "'[i]n logic and in fact the decree of dismissal preceded that of remand and was made by the District Court while it had control of the cause. Indisputably, this order is the subject of an appeal....'" *City of Waco, Texas v. United States Fidelity and Guaranty Co.,* 293 U.S. 140, 143, 55 S.Ct. 6, 7, 79 L.Ed. 244 (1934) (cited in *Armstrong,* 667 F.2d at 1387).

diction of the district court order from which the appeal is taken.

4. 28 U.S.C. § 1441 (1982) provides in relevant part:
   (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
   (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

5. Title 28 U.S.C. § 1442 (1982) provides in relevant part:
   (a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
      (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

6. Whether 28 U.S.C. § 1441 supports removal is not discussed. Generally, pursuant to § 1441, a defendant may remove only those civil actions which could have been brought initially in the district court. Most federal courts have system-

## REMOVAL

To review the district court's order vacating the state court's judgment, we must review sequentially the steps that preceded it. First, we must resolve whether the garnishment action could be removed to federal court. The government urges that removal is authorized under both 28 U.S.C. § 1441 [4] and § 1442(a)(1).[5] Loftin counters that neither of these statutes provides a basis for removal.[6]

The Supreme Court has held that "the right of removal [under § 1442(a)(1)] is absolute for conduct performed under color of federal office," *Arizona v. Manypenny,* 451 U.S. 232, 242, 101 S.Ct. 1657, 1664,

atically rejected jurisdiction of garnishment actions brought or "removed" under 42 U.S.C. § 659, holding that that statute confers no jurisdiction, but only waives sovereign immunity in favor of state court judgments. In response to the argument that the action could have been filed originally in the district court pursuant to 28 U.S.C. § 1331(a) or 28 U.S.C. § 1346(a)(2), the courts traditionally hold that the garnishment action does not "arise under" the federal law, within the meaning of § 1331(a), nor is it founded upon the Constitution, or any act of Congress, within the meaning of § 1346(a)(2). *See, e.g., Diaz v. Diaz,* 568 F.2d 1061, 1063 (4th Cir.1977); *Overman v. United States,* 563 F.2d 1287, 1292 n. 5 (8th Cir.1977); *Williams v. Williams,* 427 F.Supp. 557, 559 (D.Md.1976); *Wilhelm v. United States Dept. of Air Force,* 418 F.Supp. 162, 164 (S.D.Tex.1976); *Popple v. United States,* 416 F.Supp. 1227, 1228 (W.D.N.Y. 1976); *Golightly v. Golightly,* 410 F.Supp. 861, 862–63 (D.Neb.1976); *Morrison v. Morrison,* 408 F.Supp. 315, 317–18 (N.D.Tex.1976); *West v. West,* 402 F.Supp. 1189, 1191–92 (N.D.Ga.1975); *compare Murray v. Murray,* 558 F.2d 1340, 1341 (8th Cir.1977) (removal jurisdiction accepted without discussion); *Crane v. Crane,* 417 F.Supp. 38, 39 and n. 2 (E.D.Okla.1976) (garnishment proceedings properly removed under 42 U.S.C. § 659); *Samples v. Samples,* 414 F.Supp. 773, 773 (W.D.Okla.1976) (garnishment action under 42 U.S.C. § 659 removed; no discussion of jurisdiction); *Iowa-DesMoines National Bank v. United States,* 414 F.Supp. 1393, 1394 (S.D.Iowa 1976) (garnishment action removed pursuant to § 1441 and § 1442; no discussion of jurisdiction); *See generally Comment, The Right of Federal Officers to Remove Garnishment Proceedings Instituted to Support Child Support Decrees,* 37 Md.L.Rev. 779, 781–82 n. 8 (1978). We express no opinion on whether or not 28 U.S.C. § 1441 would support removal in this case.

68 L.Ed.2d 58 (1981), and that 28 U.S.C. § 1442(a)(1) "is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Willingham v. Morgan*, 395 U.S. 402, 406–07, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396 (1969). The Court agreed with the government that "the removal statute is an incident of federal supremacy, and that one of its purposes [is] to provide a federal forum for cases where federal officials must raise defenses arising from their official duties." *Willingham*, 395 U.S. at 405, 89 S.Ct. at 1815.

We have held that unlike § 1441, the general removal statute, § 1442 "grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction." *IMFC*, 676 F.2d at 156; *Accord* 1(A) J. Moore, *Federal Practice* ¶ 0.164[1], at pp. 384–85 (2d ed. 1985); *See Id* at 388–89.

The question in each case removed under § 1442 is not, therefore, whether the action could have been filed in district court but, rather, whether the case is against any officer, agency, or agent of the United States for any act under color of such office. *See* 28 U.S.C. § 1442(a)(1). The Fifth Circuit has had occasion to construe § 1442(a)(1) under circumstances similar to those presented in the case at bar. In *Murray v. Murray*, 621 F.2d 103 (5th Cir. 1980),[7] a woman sought to use 42 U.S.C. § 659 to garnish moneys owed to her former husband by the Veterans Administration. The United States, as garnishee, removed the action to federal court and the court granted the government's motion for summary judgment, concluding that the moneys were exempt from garnishment. The appeals court vacated the district court's judgment and remanded, with instructions to the district court to remand the case to state court "[b]ecause § 1442(a)(1) does not support the removal

of this action to the district court...." *Murray*, 621 F.2d at 108.

The issue before the court in *Murray* was narrow, namely, "whether a federal district court, as an exercise of its § 1442(a)(1) removal jurisdiction, may entertain [a] summons in garnishment commenced in state court against the United States." *Id.* at 107. Although the interpretation of a federal statute was at issue, the court noted that the United States was merely a stakeholder in the action and that its substantive liability was fixed regardless of the interpretation of the federal statute. *Id.; Accord Franchise Tax Board of California v. United States Postal Service*, — U.S. —, —, 104 S.Ct. 2549, 2556, n. 19, 81 L.Ed.2d 446 (1984) ("[A]s an initial matter it is far from clear that [a federal agency] may remove a garnishment action when it is merely a stakeholder and the real party in interest is the employee"). The *Murray* court expressly did not decide whether removal under § 1442(a)(1) might be warranted if the United States were subject to liability in excess of its acknowledged obligation to pay. *Id.* 621 F.2d at 107, n. 9.

■ *Murray* is not dispositive of the issue before us. We are now confronted with the question left unresolved by *Murray*, specifically, whether § 1442(a)(1) authorizes removal where a state court judgment is entered against the government in an amount which exceeds that which the government was required by its own statute to collect in behalf of the creditor of a federal employee. We conclude that removal was proper.

In the case *sub judice*, the Muscogee County Superior Court entered a default judgment against the United States for the full amount of the judgment secured by Loftin against Rush. That action rendered the cause removable, for it had the effect of changing the United States from a stakeholder in a garnishment action to a debtor. Whether a state can compel the

---

7. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the

former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

Navy to pay a judgment out of the United States Treasury and whether 42 U.S.C. § 659(a) can be construed to authorize this broad waiver of sovereign immunity are questions worthy of a federal forum. We assuredly do not mean to suggest that a state court is incapable of interpreting federal statutes. We hold only that the federal defenses involved are adequate to justify removal under 28 U.S.C. § 1442(a)(1). *Accord, Overman,* 563 F.2d at 1291; *Young v. Young,* 547 F.Supp. 1, 2–3 (W.D.Tenn. 1980).

## UNTIMELINESS OF REMOVAL PETITION

Since we have established that removal was authorized, we must next address the mechanics of removal. The time for removal is prescribed by 28 U.S.C. § 1446(b) (1982). Where an action is not initially removable but becomes so, the petition for removal may be filed within 30 days after the defendant receives a copy of the amended pleading, motion, order, or other paper rendering the action removable. *Id.*

Assuming that the action did not become removable until April 20, 1984, the date on which the government received the default judgment, the removal petition, filed July 10, 1984, is far beyond the 30-day time limit established by 28 U.S.C. § 1446(b).

■ The time limitation for removal is not jurisdictional but rather is modal or formal and may be waived. *Powers v. Chesapeake & Ohio Railway Co.,* 169 U.S. 92, 99, 18 S.Ct. 264, 266, 42 L.Ed. 673 (1898); *Leininger v. Leininger,* 705 F.2d 727, 729 (5th Cir.1983); *Weeks v. Fidelity & Casualty Co. of New York,* 218 F.2d 503, 504 (5th Cir.1955). Failure to object to defects constitutes waiver and may preclude a party from seeking remand to state court. *Harris v. Edward Hyman Co.,* 664 F.2d 943, 944–45 (5th Cir.1981). However, the failure to waive the timeliness issue requires the district court to remand the case in most instances. *Weeks,* 218 F.2d at 504.

After the case was removed to federal court, Loftin filed a motion for remand arguing, *inter alia,* that the petition for removal had been untimely. It is obvious that Loftin has not waived the timeliness issue but, rather, has advanced it promptly. *Compare Leininger,* 705 F.2d at 729 (where no party moves to remand because of untimeliness, parties waive time limitation).

■ We do not read *Weeks* as mandating remand in all cases where a removal petition is untimely. We are unwilling to allow a modal defect to pretermit our substantive inquiry. The timeliness of a removal petition is not jurisdictional, *supra,* and we therefore have the power to review even an untimely petition. Were we to conclude otherwise, we would trivialize our authority under 28 U.S.C. § 1442(a)(1). While we emphatically disapprove of the government's tardiness, we will not order this cause remanded on technical grounds.

■ The judgment entered against the government officer was void. Mrs. Loftin had no remedy by which she could collect the judgment of $37,966 as a lump sum against the Navy. The federal statute involved here and discussed *infra* does not waive federal immunity. It merely authorizes a federal disbursing officer to withhold funds from the future pay of a federal employee. The state court exceeded its authority in entering a judgment greater than that allowed by the statutes. The Department of Justice through the United States Attorney could have filed an original declaratory action in United States District Court to have the judgment declared void. We could consider the petition for removal as such an action or alternatively hold that the timeliness requirement in § 1446(b) is not binding on the government under the facts here. We hold the latter.

It bears emphasizing that although this cause was removable, it was not necessary to remove it. The government's primary responsibility, upon proper service of legal process, is to respond to the process. 5 C.F.R. § 581.305. More often than not, this will mean that the government submits to the jurisdiction of a state court to be-

come liable only to the extent authorized by the federal statute. *See* 5 C.F.R. § 581.-102(f). It is insulting to the notion of federalism to suggest that a state court would be unsympathetic to, or incapable of resolving, issues of federal law. As indicated in Loftin's brief and again at oral argument, Georgia has in effect procedures for relief from default judgments and procedures to vacate "void" judgments. *E.g.,* O.C.G.A. § 18–4–90 (1982); § 18–4–91 (1982); § 18–4–115 (1982); O.C.G.A. § 9–11–60 (Supp. 1985). Surely the Georgia court would have been susceptible to entertaining and was certainly capable of assessing the government's defense. Had the state courts proven recalcitrant, and had the judgment stood, the government could then have petitioned for removal under § 1442(a)(1). Where adequate state procedures exist, there is rarely a compelling reason to bypass them. The government should have sought relief from the void default judgment in the state court as any other litigant would have done.

### SOVEREIGN IMMUNITY

Having decided that the cause was properly removed, we now reach the heart of our inquiry, whether the district court was correct to conclude that 42 U.S.C. § 659(a) does not authorize the entry of a default judgment directly against the United States. To answer this question, it is helpful to examine the text, history and purpose of this statute.

Title 42 U.S.C. § 659(a) provides:

Notwithstanding any other provision of law ... effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including

members of the armed services, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments.

Until the enactment of § 659(a), federal employees were immune to garnishment proceedings. *See* S.Rep. No. 93–1356 (1974), pp. 53–54, *reprinted in* [1974] U.S. Code Cong. & Ad.News 8133, 8157. The statute was enacted to place federal employees "on a par to receive the same treatment and to assume the same responsibilities that those who are employed in the private sector now have to assume," and to force civil servants and military personnel "to accept full responsibility for care of families—especially dependent children—in the same way [as] other Americans...." 120 Cong.Rec. 41810 (1974) (remarks of Rep. Waggonner); *Id.,* at 40338 (remarks of Sen. Montoya).

After the statute had been in effect for almost two and a half years, Congress added a section authorizing regulations to be promulgated [8] and a section defining key terms.[9] It is clear from 42 U.S.C. § 659(a) that Congress intended to waive enough sovereign immunity to put the United States in the same position as if it were a private person, with a limitation on the extent of its liability. *See* 42 U.S.C. § 662(d) (1982) ("[t]he term 'private person' means a person who does not have sovereign or other special immunity or privilege which causes such person not to be subject to legal process").

Congress has caused to be subject to garnishment "moneys (the entitlement to which is based upon remuneration from employment) due from,[10] or payable by, the

---

**8.** Child Support Amendments of 1976, P.L. 95–30, Title V, § 501(c), 91 Stat. 157, 158–59 (1977) (Codified at 42 U.S.C. § 661 (1982)); *See* S.Rep. No. 94–1350, pp. 5–6 (1976); 123 Cong.Rec. 12912–13 (1977).

**9.** *Id.,* P.L. 95–30, Title V, § 501(d), 91 Stat. 157, 159–61 (1977); (Codified at 42 U.S.C. § 662

(1982)); *See* S.Rep. No. 94–1350, pp. 6–9 (1976); 123 Cong.Rec. 12913–14 (1977).

**10.** Moneys to which the employee will someday be entitled, such as retirement or pension funds, are not considered moneys due "unless and until all of the conditions necessary for payment

United States...." 42 U.S.C. § 659(a). An individual is entitled to moneys as remuneration from employment if the moneys are "compensation paid or payable for personal services ... denominated as wages, salary, commission, bonus, pay, or otherwise...." 42 U.S.C. § 662(f)(1) (1982); *See* 5 C.F.R. § 581.102(i); *Id.* § 581.103.

■ The government is under obligation to comply with "legal process." Legal process:

> means any writ, order, summons, or other similar process in the nature of garnishment, which—(1) is issued by ... a court of competent jurisdiction ... and (2) is directed to ... a governmental entity, which holds moneys which are otherwise payable to an individual, to make a payment from such moneys to another party [to satisfy a legal obligation ... to provide child support or ... alimony]....

42 U.S.C. § 662(e) (1982); 5 C.F.R. § 581.-101(f). However, the government need not comply with legal process if it would require "the withholding of funds not deemed moneys due from, or payable by, the United States as remuneration for employment." 5 C.F.R. § 581.305(a)(2).

While the Supreme Court has yet to analyze 42 U.S.C. § 659(a) and its attendant regulations in depth, it used that statute to resolve *United States v. Morton,* — U.S. —, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984). At issue in *Morton* was the construction of 42 U.S.C. § 659(f) (1982)[11] and whether the Air Force could be held liable to its employee for having honored a writ of garnishment issued without personal jurisdiction over the defendant. In overturning the Federal Circuit's adjudication of liability, the Court looked first to the language of 42 U.S.C. § 659(f) and next to its legislative history. *Id.,* — U.S. at —, 104 S.Ct. at 2774-76. The Court noted as part of its discussion of § 659(f) that § 659(a) plainly: "indicates that Congress intended the Government to receive the same treatment as a private employer with respect to garnishment orders"; that a private employer would not be held liable under these circumstances; and that "[a] construction of the statute that would impose liability on the Government for honoring a writ issued by the court with subject-matter jurisdiction [although without personal jurisdiction] would [thus] be inconsistent with the law applicable to private ·garnishees." *Morton,* — U.S. at —, 104 S.Ct. at 2775.

The *Morton* Court did not mention sovereign immunity: although it was confronted with the question of whether the government could be held liable for wrongful garnishment, it resolved that issue on the basis of the statute, history and regulations[12] alone. *Morton* does not stand for the proposition that the government is to be treated, in all cases, as if it were a private employer. *Morton* simply upholds the right of the government to be treated *as well as* a private employer.

Loftin urges us to treat the government, in all cases, exactly as if it were a private employer. She insists that 42 U.S.C.

---

of the moneys to the individual have been met...." 5 C.F.R. § 581.106.

**11.** 42 U.S.C. § 659(f) provides:
Neither the United States, any disbursing officer, nor governmental entity shall be liable with respect to any payment made from moneys due or payable from the United States to any individual pursuant to legal process regular on its face, if such payment is made in accordance with this section and the regulations issued to carry out this section.

**12.** Title 42 U.S.C. § 659(f) refers specifically to "the regulations issued to carry out this section." "Because Congress explicitly delegated authority to construe the statute by regulation, in this case we must give the regulations ... *controlling*

*weight* unless they are arbitrary, capricious, or plainly contrary to the statute." *Morton,* — U.S. at —, 104 S.Ct. at 2776 (emphasis added).

In contrast, § 659(a) does not make explicit reference to regulations. Still, we are constrained to defer to the regulations: "[I]mplementing regulations which simplify a disbursing officer's task in deciding whether to honor a writ of garnishment are entitled to *special deference,* since that was the precise objective of Congress when it delegated authority to issue regulations." *Morton,* — U.S. at —, 104 S.Ct. at 2776 (emphasis added); *See Scarborough v. Office of Personnel Management,* 723 F.2d 801, 806 (11th Cir.1984).

§ 659(a), as discussed in *Morton*, purports to put the United States in quite the same position as any private employer. Thus, she would hold the United States liable for the full amount of the default judgment.

Let us assume for the moment that James Rush worked not for the government but for a private entity. After Rush reneged on his support obligation, the private entity was served with a summons of continuing garnishment. It did not file a timely answer, and a default judgment was entered against it, pursuant to O.C.G.A. § 18–4–90. It did not move to have that judgment modified and so it became final.

Under O.C.G.A. § 18–4–115(a), the private entity would be liable to Pamela Loftin for the full amount of the default judgment. It could always move to vacate under O.C.G.A. § 9–11–60, but if it did not timely answer, it would have been liable for Loftin's entire claim. Many states, if not most, have enacted similar laws. *See e.g., Webb v. Erickson*, 134 Ariz. 182, 187, 655 P.2d 6, 11 (1982); *Aluminum Co. of America v. Higgins*, 5 Ark.App. 296, 298–99, 635 S.W.2d 290, 291 (1982); *Mississippi Action for Community Education v. Montgomery*, 404 So.2d 320, 322 (Miss.1981); *American Express Co. v. Monfort Food Distribution Co.*, 545 S.W.2d 49, 53 (Tex.Civ. Apps.1976); *Termplan, Inc., Bolton v. Haynes*, 137 Ga.App. 122, 123, 223 S.E.2d 19, 21 (1975); *Barnett Home Appliance Corp. v. Guidry*, 224 So.2d 134, 136 (La. App.1969); *Conejos County Lumber Co. v. Citizens Savings & Loan Assn.*, 80 N.M. 612, 614, 459 P.2d 138, 140 (1969); Fla.Stat. Ann. § 77.081 (Supp.1985); § 6–6–457, Code of Alabama 1977, *compare Ware v. Phillips*, 77 Wash.2d 879, 883, 468 P.2d 444, 447 (1970) (since no notice was provided garnishee that failure to answer would

render it liable for entire judgment, judgment was void for want of due process).

■ The fact that the United States, rather than a private firm, is the garnishee is not incidental. "The United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980), *quoting United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). Waivers of immunity must be " 'construed strictly in favor of the sovereign,' " and not " 'enlarge[d] ... beyond what the language requires.' " *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983) (citations omitted).

Certainly, Congress waived a part of the government's sovereign immunity in enacting 42 U.S.C. § 659(a): Congress's stated purpose indicates as much. *See* 120 Cong. Rec. 41810 (*supra*); S.Rep. No. 93–1356 (*supra*); 42 U.S.C. §§ 659(a), 662(d). It is equally clear that state law was to furnish the underlying right to garnish wages, and, in large part, the mechanics of the garnishment.[13]

■ Nonetheless, the text of 42 U.S.C. §§ 659(a) and 662 and the pertinent regulations convince us that Congress did not intend the federal government to be subject to State default judgments that would render the United States liable for any amount in excess of that owed to the judgment debtor/employee at the time of the garnishment. Congress provided that wages *due from*, or *payable by* the United States are to be subject to garnishment. Those terms were clarified by 5 C.F.R. §§ 581.105 and 581.106, and these regula-

---

**13.** MR. KAZEN. Is the Federal Government going to be subject to State court orders? How is it going to be enforced? ...

MR. ULLMAN. It is based on the State court order for child support....

MR. KAZEN. In other words, what the gentleman is saying is the Federal Government going to be subject to State court orders, so far as garnishment is concerned?

MR. ULLMAN: We just simply have found no better way to do it. If a father has run away from his family and his obligations, there is the problem that we have been trying to face up to for a long time but have not, as to how we can get to that father to make him live up to his obligations.

120 Cong.Rec. 41809 (1974).

tions indicate, at 581.106, that moneys to which no right of payment has accrued are not considered "due." Nor, would it seem, are moneys "due" if they were paid before the garnishee was served with process. And unless the moneys are "due," 42 U.S.C. § 659(a) does not subject them, or the United States, to the reach of state garnishment laws. Put another way, only those moneys due to a federal employee at the time are subject to superimposed state garnishment laws. 5 C.F.R. § 581.-305(a)(2); *See* 5 C.F.R. § 306.

All that Congress has done, in 42 U.S.C. § 659(a), is to give the government's consent to be sued, to render the government subject to legal process. *See* 42 U.S.C. § 662(d). Congress determined that the government could act as a collection agent in certain cases, but created no right of action against the government for moneys owed by its employees to third parties. The sovereign's "procedural immunity" has been waived: since the enactment of 42 U.S.C. § 659(a), the government can be named as a party in specific garnishment actions against its employees.

Loftin's proffered interpretation of 42 U.S.C. § 659(a) would do violence to the principle of sovereign immunity. Congress has carefully circumscribed a right for particular payments from money the government will owe employees from the date of service of process of garnishment. It evinced no intention to make the government, as employer of a debtor, wholly liable for a debt it did not incur.

Only one federal court has been confronted with the precise issue before us. In *Young v. Young,* 547 F.Supp. 1 (W.D. Tenn.1980), plaintiff sought to attach her husband's federal wages. The Coast Guard, through inadvertence, failed to honor the writ, and a Tennessee court entered a conditional judgment against the Coast Guard for the full amount of the judgment. The Coast Guard removed to federal court. The district court reviewed, *inter alia,* an opinion of the Comptroller General of the United States, 56 Op.Com.Gen. 592 (1977) (B–188654), in which the Comptroller concluded that the negligence of an agent, who failed to timely honor a garnishment, was no bar to the entry of a default judgment against the United States. 56 Op. Com.Gen. at 595. Any other rule, opined the Comptroller, would frustrate 42 U.S.C. § 659(a), the purpose of which was to treat the government as if it were a private person. *Id.*

The court in *Young* did not adopt the Comptroller's view, concluding that it "cannot be reconciled with even the most liberal construction of a statute which authorizes garnishment of wages 'due' or 'payable.' " *Young,* 547 F.Supp. at 4. Instead, the court ordered the government to pay plaintiff the funds it should have withheld, had it properly honored the garnishment, plus interest.

In a related context, in *Overman v. United States,* 563 F.2d 1287 (8th Cir.1977), the court dismissed, for lack of jurisdiction, a debtor's action brought against the United States that challenged the validity of a divorce decree on the authority of which the United States planned to garnish wages. Obviously annoyed by what it construed as a debtor's attempt to litigate the validity of a divorce decree in federal court, the court noted that "[42 U.S.C. § 659(a)] simply removed the bar of sovereign immunity to one narrow class of actions: enforcement of garnishment writs issued by state courts.... Nothing in the statute or legislative history ... indicates any Congressional intent to expose the Government to wider liability." *Overman,* 568 F.2d at 1291. The court concluded that 42 U.S.C. § 659(a) "patently does not waive governmental immunity to other kinds of lawsuits...." *Id.*

We hold that 42 U.S.C. § 659(a) was not intended to authorize payment of default judgments entered against the United States pursuant to state law. We do not say that Congress could not have authorized this; we hold only that it has not. We reach this conclusion based on the text of the statute, its history and regulations, and the case law directing us to construe waivers of sovereign immunity stringently.

Having said that, we must clarify that we are not willing to condone the government's negligence nor to permit it to profit by its disorganization. Loftin is entitled to receive payment, in accordance with 5 C.F.R. § 581.301, as of the date the Navy was properly served with process. The record indicates that the government was served on February 7, 1984, but paid out no moneys until June of 1984. The government is ordered to pay over to Loftin the money it should have withheld from February to June. No interest is assessed.

The order of the district court remanding the case and vacating the state court judgment is affirmed, subject to modification, if necessary, to incorporate the directions to the government contained in the preceding paragraph.

AFFIRMED.