WILLIAM T. CONKLIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Conklin v. Commissioner
Docket No. 40976-85.
United States Tax Court
T.C. Memo 1987-411; 1987 Tax Ct. Memo LEXIS 408; 54 T.C.M. (CCH) 173; T.C.M. (RIA) 87411; August 24, 1987; WITHDRAWN July 20, 1988 Richard F. Thurston, for the Petitioner. Cynthia J. Olson, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION Fay, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: ADDITIONS TO TAX
SECTION
SECTION
SECTION
YEAR
DEFICIENCY
6653(a) [1]
6653(a)(1)
6653(a)(2)
1979
$ 7,601
$ 380
--
--
1980
$ 9,220
$ 461
--
--
1981
$ 9,800
--
$ 490
*
*409 After concessions, the issues are (1) whether this Court has jurisdiction; (2) Whether petitioner is entitled to charitable contribution deductions for contributions made the the Church of World Peace, Inc.; and (3) whether petitioner is liable for the additions to tax as determined by respondent. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly, except as hereinafter specifically stated. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioner resided in Denver, Colorado, at the time he filed his petition herein. Petitioner has a masters degree in Spanish, a masters degree in communication theory and rhetoric, four years of graduate work in education, communications, philosophy, and psychology, and training in theology. During 1979, 1980, and part of 1981, petitioner was a teacher at *410 a public school. Petitioner is married, but his wife, Mary Ann Tavery, is not a party to this action. Petitioner and his wife, hereinafter sometimes referred to as the "Conklins," filed joint returns for each of the years at issue. In 1977, petitioner founded the Church of World Peace, Inc. ("CWP") for the stated purpose of promoting world peace. Petitioner was a member of the board of directors of CWP and was CWP's archbishop. CWP's permanent location was the Conklin's residence. In 1978, respondent determined that CWP was exempt from Federal income tax and that contributions made to CWP are deductible by the contributors thereof. [2]
During the years at issue, petitioner wrote checks on accounts in the Conklins' names payable to CWP in the following amounts: YEAR
AMOUNT
1979
$ 9,271
1980
10,195
1981
1,500
Checks written on the Conklins' accounts payable to CWP often occurred in conunction with checks written on CWP's accounts payable to petitioner. *411 For example, on January 25, 1979, petitioner signed a check written on the Conklin's accounts payable to CWP in the amount of $ 390 and, on the same date signed a check written on CWP's accounts payable to himself in the amount of $ 390. In 1981, and to some extent in 1979 and 1980, checks were written on CWP's accounts to the Conklin's creditors to pay the Conklins' personal living expenses. Petitioner admitted at trial that he would not have been financially able to make "contributions" of the magnitude he made during the years at issue if he got nothing in return for such contributions. The Conklins executed extensions of time to assess tax, Forms 872-A, for the 1979 and 1980 taxable years. In January of 1985, the extensions were terminated by notices of termination, Forms 872-A. The statute of limitations was kept open as to, petitioner pursuant to section 7609(e) because petitioner brought suit to quash summonses issued by respondent. Petitioner's wife was not a party to the suit to quash summonses, and section 7609(e) did not further toll the statute of limitations as to her. On April 11, 1985, respondent issued a notice of deficiency to petitioner's wife determining *412 deficiencies for 1979, 1980, and 1981 attributable to (1) charitable contribution deductions claimed by the Conklins on their joint returns ("Item 1"), (2) employee business expenses claimed by the Conklins on their joint returns ("Item 2"), (3) miscellaneous deductions claimed by the Conklins on their joint returns (Item 3"), (4) tax credits claimed by the Conklins on their joint returns ("Item 4"), and (5) additions to tax pursuant to section 6653(a) for 1979 and 1980 and section 6653(a)(1) and (2) for 1981 ("Item 5"). Petitioner's wife paid the deficiencies and additions to tax and filed refund claims with respondent. As of the time of the trial in this case, respondent had disallowed the 1979 refund claim and had taken no action with respect to the 1980 and 1981 refund claims. Petitioner's suit to quash the summonses, which was unsuccessful, was concluded on May 28, 1985. Conklin v. United States, an unreported case (D. Colo. 1985) 85-2 USTC par. 9534, 56 AFTR2d 85-5654. On August 12, 1985, respondent issued to petitioner the notice of deficiency upon which this case is based. This notice of deficiency determined deficiencies attributable to Items 1 through *413 5 and four additional items: (1) unexplained deposits treated as taxable income that should have been reported by the Conklins on their joint returns ("Item 6"), (2) rental income that should have been reported by the Conklins on their joint returns ("Item 7"), (3) income from sale of a piano that should have been reported by the Conklins on their joint returns ("Item 8"), and (4) rental expenses claimed by the Conklins on their joint returns ("Item 9"). Respondent has conceded Items 2, 3, 6, 7, 8, and 9. The parties have reached an agreement with respect to Item 4 and a partial agreement with respect to Item 1. The parties have stipulated: The only issue for trial is whether or not petitioner is entitled to deductions for charitable contributions claimed to have been made to the Church of World Peace, Inc. * * *. OPINION [3]
*414 The first issue is whether this Court has jurisdiction. Petitioner argues that this Court lacks jurisdiction because there is no deficiency: the deficiency with respect to items (1) through (5) had been paid, and respondent has conceded the deficiency with respect to items (6) through (9). Even if no deficiency existed with respect to items (1) through (5), and issue which we do not now reach, cf. Dolan v. Commissioner,44 T.C. 420, 430 (1965), a deficiency did exist with respect to items (6) through (9). This Court is not deprived of jurisdiction simply because such items were resolved by the parties in petitioner's favor. See McGowan v. Commissioner,67 T.C. 599 (1976); Bowman v. Commissioner,17 T.C. 681 (1951). See also Hannan v. Commissioner,52 T.C. 787, 791 (1969)("it is not the existence of a deficiency but the Commissioner's determination of a deficiency that provides a predicate for Tax Court jurisdiction"). The next issue is whether petitioner is entitled to charitable contribution deductions *415 made to CWP. Petitioner relies heavily on respondent's 1978 exemption letter. We first note that the issuance by respondent of the 1978 exemption letter does not now preclude him from challenging the claimed charitable contribution deductions. In Miedaner v. Commissioner,81 T.C. 272 (1983), the taxpayer established a church that received an exemption letter from respondent similar to the one issued to CWP. We held that where the church was operated in a manner materially different from that originally represented in the exemption application, the respondent was not estopped from disallowing the taxpayer's claimed charitable contribution deductions. Miedaner v. Commissioner, supra at 281-282. Here CWP's exemption application did not indicate that the contributions to CWP would be used to pay the Conklins' personal living expenditures. Accordingly, we hold that CWP has been operated in a manner materially different from that represented and that respondent is not estopped from disallowing the claimed charitable contribution deductions. We note, as we *416 did in Miedaner v. Commissioner, supra at 282, that we are not dealing with "an unrelated third party [that] has relied on an exemption letter; rather, we are dealing with the founder of the church himself." Deductions are a matter of legislative grace and taxpayers must satisfy the specific statutory requirements of the deductions they claim. Deputy v. du Pont,308 U.S. 488 (1940); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Taxpayers bear the burden of proving their entitlement to the deductions they claim. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). "These rules apply with equal force to deductions claimed for charitable contributions." Davis v. Commissioner,81 T.C. 806, 815 (1983), affirmed without published opinion 767 F.2d 806, 815 (1983), affirmed without published opinion 767 F.2d. 931 (9th Cir. 1985). In Davis v. Commissioner, supra, the taxpayer transferred funds from her personal checking account to a Universal Life *417 Church checking account over with such taxpayer had signatory authority. We held that the taxpayer's signatory authority over the Universal Life Church account allowed the taxpayer to retain dominion and control of the funds transferred to the Universal Life Church checking account and precluded the finding that there has been a charitable contribution as that term is used in section 170. Petitioner here claims charitable contribution deductions for funds transferred to CWP accounts. Petitioner had signatory authority over the CWP accounts and thus retained dominion and control of the funds transferred to such accounts. Since petitioner retained dominion and control over the funds transferred to the CWP accounts, we hold that the transfer of such funds do not constitute charitable contributions within the meaning of section 170. See Davis v. Commissioner, supra, and cases cited therein. See also Wedvik v. Commissioner,87 T.C. 1458, 1465 (1986). Further, a charitable contribution deduction is not allowed where net earnings of the recipient of the *418 contribution inure to the benefit of any individual. See sec. 170(c)(2)(C); Svedahl v. Commissioner, 89 T.C.    (August 10, 1987) (slip op. at 10); and cases cited therein. The record overwhelmingly establishes that the contributions made to CWP inured to the Conklins' benefit. During the years at issue, a large portion of the funds transferred to CWP's checking accounts were transferred back to the Conklins' account or were used to pay the Conklin's personal living expenses. Petitioners failed to prove that the use of the funds in this manner was for a proper exempt purpose. The funds transferred do not qualify for a charitable contribution deduction because of inurement. See David v. Commissioner, supra at 818; Miedaner v. Commissioner, supra at 281; and McGahen v. Commissioner,76 T.C. 468, 482-483 (1981). Finally, in Sedam v. United States,518 F.2d 242, 245 (7th Cir. 1975), the Seventh Circuit stated, "a payment is not a contribution of receiving a commensurate benefit in return * * *." Petitioner admitted that he would not have been financially able to make the "contributions" to CWP if he got nothing *419 in return for such contributions. Accordingly, we hold that petitioner transferred funds to CWP's checking accounts expecting to receive benefits in exchange therefore. For this reason, the transfers are not contributions under section 170. Sedam v. United States, supra.See also Svedahl v. Commissioner, 89 T.C.    (August 10, 1987) (slip op. at 10), and cases cited therein. For the foregoing reasons, we hold that the amounts transferred to CWP are not deductible by petitioner as charitable contribution deductions under section 170. The next issue is whether petitioner is liable for the section 6653(a) additions to tax for 1979 and 1980 and the sections 6653(a)(1) and (2) additions to tax for 1981. Before we consider the substance of this issue, we must dispose of an argument raised by petitioner. The parties stipulated: The only issue for trial is whether or not petitioner is entitled to deductions for charitable contributions claimed to have been made to the Church of World Peace, Inc. * * * [Emphasis added.]
Petitioner argues that pursuant to this stipulation the additions to tax issue is not properly before the Court. [4] Generally, *420 the Court recognizes the effect of stipulations and gladly accepts the parties' delimination of the issues presented. However, the "interpretation of a stipulation primarily is determined by ascertaining the intent of the parties, and such intent is a question of fact." Stamos v. Commissioner,87 T.C. 1451, 11455 (1986) (citations omitted). Where a stipulation is interpreted in a manner contrary to the intent of both parties to the stipulation, the stipulation will not be given effect. Respondent's counsel obviously did not intend to remove the additions to tax issue from consideration by this Court, as respondent convincingly argued such issue on brief. Further, it appears as though petitioner's counsel would agree with this characterization of respondent's counsel's intent. See n.4, infra. Petitioner's counsel admits on brief that it was not his intention to preclude consideration by this Court of the additions to tax issue. [5] Since the intention of both parties with respect the the above-quoted stipulation is contrary to petitioner's *421 interpretation thereof, we reject petitioner's interpretation and hold that the additions to tax issue is properly before the Court. Section 6653(a) with respect to the 1979 and 1980 taxable years in issue and sections 6653(a)(1) and (2) with respect to the 1981 taxable year at issue impose additions to tax where the taxpayer has acted negligently or with intentional disregard of the rules and regulations. Petitioner bears the burden of proof on this issue. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972); Rule 142(a). Petitioner is a well educated individual who could not have believed that he could properly claim charitable contribution deductions for funds deposited in a bank account, in the name of a church *422 that he established, over which bank account he retained dominion and control, where he exercised such dominion and control to pay his and his wife's personal living expenditures. We hold that petitioner intentionally disregarded the rules and regulations. Therefore, we sustain respondent's determination of additions to tax. To reflect the foregoing and concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50% of the interest due on the underpayment caused by negligence. ↩
2. The exemption letter was issued upon CWP's exemption application. CWP's exemption application did not indicate that contributions to CWP would be used to pay the Conklins' living expenses. ↩
3. Respondent has investigated CWP and in connection therewith issued a summons to CWP. Upon CWP's refusal to comply with the summons, respondent brought suit in District Court seeking enforcement. The Tenth Circuit, on CWP's appeal, reversed. United States v. Church of World Peace,775 F.2d 265 (10th Cir. 1985). However, by the time the Tenth Circuit acted, the enforcement of the summons had been complied with and respondent was in possession of the documents covered by the summons. From these documents, respondent learned of CWP's checking accounts. Respondent issued summonses to the banks that handled CWP's checking accounts and obtained CWP's canceled checks and deposit slips which were offered for introduction at trial over petitioner's objection. Petitioner argued that the canceled checks and deposit slips are the fruit of the poisonous tree. See Nardone v. United States,308 U.S. 338, 341 (1939), and Wong Sun v. United States,371 U.S. 471 (1963). We overruled petitioner's objection and allowed the evidence to be introduced. Had respondent not learned of CWP's checking accounts from the summons which the Tenth Circuit ultimately held invalid, respondent would inevitably have discovered the accounts by examination of canceled checks submitted by petitioner to substantiate the claimed charitable contribution deductions. See Nix v. Williams,467 U.S. 431↩ (1984). 4. We note that this argument is inconsistent with petitioner's argument that his Court lacks jurisdiction. ↩
5. Petitioner's responsive brief states in relevant part: In regards to the stipulation language, counsel for both parties did not consider the penalty issue during trial preparation through inadvertance or oversight. Had the issue been discussed or thought of, counsel for petitioner would have agreed that the issue was for decision by the Court. ↩