**In the Matter of the ESTATE OF Bobby MASTERS, Deceased.**

**No. 05–CIV–060–WH.**

United States District Court, E.D. Oklahoma.

March 16, 2005.

either in the briefs or during oral argument, to explain how any federal statute confers jurisdiction on this Court, and, indeed, none of them do.

Juliet N. Brennan, Albert R. Matthews, Martha J. Cherbini, Bonds Matthews Law Firm, Muskogee, OK, for Plaintiff, Lisa Victoria Smith, In the Matter of the Estate of Bobby Joe Masters, Deceased.

Susan S. Brandon, Robert Gay Guthrie, Office of the United States Attorney, Muskogee, OK, for Defendant, United States of America.

## ORDER

WHITE, District Judge.

Following the death of Bobby Masters, Lisa V. Smith ("Smith") was appointed Personal Representative of his estate by the Muskogee County District Court. The United States voluntarily intervened in the proceeding in state court in order to terminate Smith as the Personal Representative of the Estate of Bobby Masters ("Estate"). Thereafter, the government removed the probate action to this Court.

Before the Court are the United States' Response to the Court's Order to Show Cause [1] [Docket # 4] filed on February 17, 2005 and Lisa Smith's Motion to Remand and Brief in Support [Docket # 3] filed on February 9, 2005. The government contends that this probate matter is properly removable pursuant to 28 U.S.C. §§ 1441, 1442(a)(1) and 1446. A hearing on the issue was held on March 11, 2005. The government made no persuasive attempt,

### RELEVANT FACTS

1. Bobby Masters died on July 18, 2003 in the jewelry store he owned. He was apparently murdered. Police found approximately $56,000.00 in cash and approximately 50 pounds of marijuana at the scene. The police seized all the property that was either the instrumentality or the proceeds from what appeared to be an obvious drug trafficking enterprise.

2. On July 23, 2003, Lisa V. Smith ("Smith") filed a Petition For Forthwith Letters of Administration in the Estate in Muskogee County District Court. Smith claimed, under oath, that she was the only heir. That claim appears to have been inaccurate.

3. On August 4, 2003, Smith was appointed Personal Representative of the Estate.

4. On September 12, 2003, the FBI began an administrative forfeiture action against the property seized by the police. The property was subsequently relinquished to the custody of United States.

5. On January 6, 2004, Smith filed a claim in the administrative forfeiture action begun by the FBI on September 12, 2003.

6. On April 6, 2004, the United States commenced a judicial forfeiture of

---

1. The Court ordered the government to show cause in writing why this case should not be dismissed for lack of subject matter jurisdiction on February 8, 2005. The wording of the Court's Show Cause Order was at least partially improvident. Of course, the most appropriate remedy here if the removal was improper is to remand the case to state court.

the property. The forfeiture action is currently pending in this Court (Case No. CIV–04–159–W).

7. On January 26, 2005, the United States moved to intervene in the probate of the Estate in order to contest Smith's status as Personal Representative. The motion was granted.

8. On January 28, 2005, the state court dismissed Smith's replevin action, filed on October 31, 2003, because the federal court had jurisdiction over the property in the forfeiture action.

9. On February 7, 2005, the United States filed its Notice of Removal of the state probate matter in the present case.

10. In its Response, the government sets forth numerous allegations regarding how Smith has willy-nilly lied and obfuscated in the probate and forfeiture actions.

### ANALYSIS

Ironically, the main focus of the government's Response, both in the statement of the facts and the legal argument, appears to be the forfeiture action already pending in this Court. The very pendency of the forfeiture action, however, vitiates any persuasiveness arising from the arguments asserted by the government justifying its removal of this case.

After sifting through the government's litany of facts, some of which the Court summarized above, the Court has determined that the crux of the government's position in the present matter is that

Smith is a bad person. Consequently, argues the government, this Court should exercise its limited jurisdiction over the probate matter. Unfortunately, Congress has not seen fit to promulgate "bad person" jurisdiction by statute. This Court refuses to do so by judicial fiat.

The government claims in its brief that § 1441 provides the authority for the Court to extend its limited jurisdiction to this probate matter.[2] "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant[.]" 28 U.S.C. § 1441(a). The government, however, failed to demonstrate the existence of diversity of citizenship in the probate matter under 28 U.S.C. § 1332. Additionally, the government failed to demonstrate the existence of a federal question in the probate matter under 28 U.S.C. § 1331. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required."). In fact, the government makes no effort to articulate under which section within 28 U.S.C. § 1330 et seq. Congress has conferred original jurisdiction to the Court in this matter.

 Presumably the government's argument is that the probate action is actually a claim against the United States pursuant to 28 U.S.C. § 1346—titled: "United States as defendant"; however, a review of § 1346 does not substantiate the argument. First, this is not a matter pertaining to erroneously or illegally assessed

---

**2.** This argument was appropriately aban- doned in the hearing.

taxes or any other relevant tax matter. § 1346(a)(1) & (e). Second, the amount at issue here exceeds $10,000, and is not "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department[.]" § 1346(a)(2). This is neither a tort case, nor a case involving the quiet title of real property, nor a case involving presidential actions. § 1346(b),(f) & (g). Finally, and most importantly, this probate matter is not in any way a claim *against* the United States.

■ The government attempts to argue that the probate is actually a claim against an agency of the United States; i.e., the United States Marshal's office in its role as temporary holder of the property relevant to the forfeiture hearing, and thus removal would be proper under 28 U.S.C. § 1442(a)(1). "A civil action … *commenced* in a State court *against* [[t]he United States or any agency thereof … *sued* in an official or individual capacity for any act under color of such office … ] may be removed[.]" § 1442(a). Although § 1442 should be construed liberally [3], the plain language of § 1442 requires the civil action be "commenced … against" the United States. The government claims that § 1442 "grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction." *IMFC Professional Services of Florida, Inc. v. Latin American Home Health, Inc.*, 676 F.2d 152, 156 (5th Cir.1982). This may be true, but alas, it is irrelevant to the present case because the probate action is not an action

commenced against a federal agency or officer. "The only prerequisite to removal of a civil action under § 1442 is that it be brought against a federal officer or agency." *Id.* at 156.

■ The purpose of the probate is to distribute the property *belonging* to the Estate in the manner intended by the decedent. *See In re Estate of Squire*, 6 P.3d 1060 (Okla.Civ.App.1999). At the present time, the owner of the property that is the subject of the forfeiture proceeding is unknown. Consequently, a probate cannot distribute that property. Additionally, as the government has so thoroughly established, Smith's standing as Personal Representative will have no effect on the property presently being held by the United States Marshal's office pending the outcome of the forfeiture action because a state probate action cannot disburse property in the federal government's custody.[4]

The government cites three cases with demonstrably different facts from the case at hand in order to demonstrate that jurisdiction is proper. While conceding at the hearing that none of the cases cited in the Response were on point, the government contends that they are instructive. To that end, the government asserts that *Loftin v. Rush*, 767 F.2d 800 (11th Cir.1985), is the best case to demonstrate that the Court has jurisdiction in this matter.

In *Loftin* the ex-wife of a United States Naval employee swore out an Affidavit of Continuing Garnishment against her ex-husband for his failure to pay the child

---

3. *See Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969).

4. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the

United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding". U.S. Const. art. VI, cl. 2. (a.k.a.: the Supremacy Clause).

support he was obligated to pay. A Summons of Garnishment for $37,966.00 was served on the United States Navy. The Summons indicated that failure to answer could render the Navy responsible for the full judgment. After the deadline for the Navy's answer passed, a default judgment was issued against the Navy for the full $37,966.00. The Navy was then threatened with a Writ of Executions unless the full amount was paid by the first of the next month. The Navy removed the case. In holding that the removal was proper, the district court concluded that the default judgment against the Navy "had the effect of changing the United States from a stakeholder in a garnishment action to a debtor." *Id.* at 804. Thus, in actuality, the United States had become a defendant.

In the present case, the United States was not served by Smith. Instead, the government voluntarily intervened into the probate matter for a very limited purpose: namely, to challenge Smith's status as Personal Representative of the Estate. Additionally and most importantly, the United States is not a debtor here. That was the basis for conferring jurisdiction in *Loftin*. Thus, the *Loftin* decision is wholly distinguishable from the present case. The other cases cited by the government are similarly unpersuasive.

The government quotes *IMFC Professional Services of Florida, Inc. v. Latin American Home Health, Inc.*, 676 F.2d 152 (5th Cir.1982), a case in which the Department of Health and Human Services ("HHS") intervened as the real party in interest in the stead of Aetna Life and Casualty Insurance Company, which was HHS' fiscal intermediary. Again, the facts of *IMFC* are such that the legal determination of that court is irrelevant to the determination to be made by this Court.

In the present case, the probate of the Estate will have no effect, one way or another, on the United States. That was clearly not the case in *IMFC*.

Finally, the government cites *Arizona v. Manypenny*, 451 U.S. 232, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981), a case in which a federal border patrol agent was charged in Arizona state court with assault with a deadly weapon after he shot at a fleeing illegal alien. The Agent was on duty at the time of the alleged incident and was acting within the scope of employment. Once again, the facts are significantly different from the present case, such that the Supreme Court's conclusion has no value to the Court at this time. The present case is not a criminal case. No case was commenced against the United States as required by § 1442(a)(1). Finally, the United States has no real interest in the probate.

■ During oral arguments the government also indirectly invoked jurisdiction pursuant to § 1442(a)(2), which allows for removal in the event that a state court action is commenced against "a property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States." Whether the government intended to argue jurisdiction pursuant to § 1442(a)(2) is unclear. In any event, § 1442(a)(2) requires: (1) the civil action to be "commenced ... against" the "property holder"; and (2) that the action affects the validity of some federal law. *See Crow v. Wyoming Timber Products Co.*, 424 F.2d 93 (10th Cir.1970). Both requirements are absent in the present case.

■ Additionally, the government asserted during oral argument that the Court should extend jurisdiction to this

matter in the name of judicial economy. The government makes this rather bold assertion based on the fact that this Court, through the forfeiture pending before Magistrate Judge West, already has jurisdiction over some of the property at issue in the probate.[5] Aside from the fact that the Court cannot simply circumvent the jurisdictional boundaries established by Congress in order to reach a desired result, the removal of the probate to this Court was in gross opposition to judicial economy. In fact, the government's stated purpose for the removal was to prolong the probate due to its failure to challenge Smith's status as Personal Representative in a timely manner. Furthermore, the government acknowledged that the forfeiture matter provides a forum to challenge Smith's rights to the property currently under the control of the United States Marshals. Therefore, the government has failed to establish jurisdiction, original or otherwise.

■ Assuming that the existence of initial jurisdiction was demonstrated, however, remand would still be appropriate. Under the probate exception to federal jurisdiction, federal district courts are prohibited from adjudicating probate matters. Mysteriously, neither party cited the probate exception to federal court jurisdiction in their legal briefs. During the hearing the government professed ignorance of the exception.

"It is well settled that federal courts have no probate jurisdiction." *Bedo v. McGuire,* 767 F.2d 305, 306 (6th Cir.1985). "As a general matter, courts tend to view the probate exception as extending to all suits 'ancillary' to [probate.]" *Mangieri v. Mangieri,* 226 F.3d 1, 2–3 (1st Cir.2000). The Supreme Court has stated that the jurisdiction of federal courts has not been extended to probate matters by Congress. *Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946). Consequently, a two-part inquiry was developed to determine if the probate exception applies to bar a suit from federal court. "The first question is whether the court is being asked to probate a will or administer an estate. The second question is whether entertaining the action would cause the court to interfere with the probate proceedings[.]" *In Re: Estate of Threefoot,* 316 F.Supp.2d 636, 643 (W.D.Tenn.2004). "If the answer to either question is yes, the case should be remanded[.]" *Id.*

■ By the plain language of the Notice of Removal and their Response, the government is requesting that the Court "interfere with the probate proceedings" of Bobby Masters. Indeed, the government admitted at the hearing that its requested relief—the removal of Smith as Personal Representative—would unquestionably qualify as an "interference" to the probate. Insofar as the Court can divine the tactic of removal here, the government intends not only for this Court to interfere with the probate, but also to stop it in its tracks until the forfeiture action is tried. The limited nature of federal jurisdiction and the abundance of legal precedence clearly forbid the Court from doing so. Therefore, it is the Order of the Court that the above captioned case be and is hereby REMANDED.

■ The Court find that Smith's Motion to Remand and Brief in Support [Docket

---

5. Although the United States has no real interest in the property of the Estate not currently related to the forfeiture matter, the government maintains that it has an indirect interest in the disposition of that property. This assertion was not fully explained at the hearing and appears to be incorrect.

# 3] is MOOT given the ruling above. Smith's request for attorney fees under 28 U.S.C. § 1447(c) would most certainly have been granted if not for the redundancy of their motion with the Court's own Show Cause Order. Showing that removal was undertaken for an improper purpose is, of course, not a prerequisite for an award of fees pursuant to 28 U.S.C. § 1447(c), *Suder v. Blue Circle, Inc.*, 116 F.3d 1351, 1352 (10th Cir.1997)(holding that a district court has discretion to award fees and cost under § 1447(c) and no showing of bad faith need be made to justify award). In any event, no definitive evidence of improper purpose exists here. The Court does admit to some surprise, however, at the apparent lack of legal inquiry undertaken before removal was commenced.