**Edith M. YOUNG, Plaintiff,**

v.

**Earl Stanley YOUNG and United States Department of Transportation, United States Coast Guard, Defendants.**

**No. 79–2435.**

United States District Court,
W. D. Tennessee, W. D.

Feb. 7, 1980.

William M. Jeter, Memphis, Tenn., for plaintiff.

Robert M. Williams, Jr., Asst. U. S. Atty., Memphis, Tenn., for defendants.

## ORDER

WELLFORD, District Judge.

Plaintiff originally brought this action in state court against the United States Coast Guard, the employer of her former husband, seeking judgment based on the Coast Guard's failure to honor a garnishment of her former husband's wages issued because of the latter's failure to make court-ordered child support payments. Plaintiff obtained a conditional judgment against the Coast Guard. The Coast Guard then removed the action to this Court and has filed a motion to dismiss and an alternative motion to quash the conditional judgment of the state court on sovereign immunity grounds. Plaintiff has moved for summary judgment.

## FACTS

Plaintiff Edith M. Young obtained a divorce from Earl Stanley Young, an employee of the Coast Guard, in the Chancery Court of Shelby County, Tennessee, on January 21, 1977. In the divorce decree, the Chancellor ordered Mr. Young to pay child support of $300 per month and also to pay an attorney's fee in the amount of $800.

After Mr. Young fell behind on the child support payments, plaintiff obtained a number of state court garnishments directed to the Coast Guard as Mr. Young's employer. Garnishment of federal employees based on child support or alimony obligations is authorized by 42 U.S.C. § 659, which provides as follows:

(a) Notwithstanding any other provision of law, effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or to make alimony payments.

In addition, 42 U.S.C. § 662 provides that, for purposes of § 659, the terms "child support" and "alimony" include attorney's fees, interest, and court costs.

Through apparent inadvertence, the Coast Guard failed to honor a garnishment issued on January 10, 1979. This garnishment was effective for three months under state law and was based on an underlying total debt of $8,330.35. Based on the Coast Guard's failure to honor the garnishment, plaintiff obtained a conditional state court judgment in the amount of $7,092.63 under Tenn.Code Ann. § 26–238, which makes a garnishee who fails to honor a garnishment potentially liable for the entire underlying debt.

Prior to a state court hearing to determine whether the conditional judgment should be made final, the Coast Guard removed to this Court, asserting jurisdiction under 28 U.S.C. §§ 1441 and 1442.

## JURISDICTION

Although plaintiff has not contested removal, there is apparently some question as to the Court's jurisdiction in this case. It is now settled that § 659 did not create a federal cause of action, but merely waived the defense of sovereign immunity in certain state cases. *Stephens v. United States Dept. of Navy*, 589 F.2d 73 (4th Cir. 1979); *Diaz v. Diaz*, 568 F.2d 1061 (4th Cir. 1977); *Popple v. United States*, 416 F.Supp. 1227 (W.D.N.Y.1976). Thus this Court would not have jurisdiction over an original proceeding brought to enforce garnishments against a federal employer. In the absence of potential original jurisdiction, removal jurisdiction may not be predicated on 28 U.S.C. § 1441 in this case.

The courts are divided, however, on the question whether a state suit against a federal garnishee under § 659 may be removed under § 1442(a)(1), which confers removal jurisdiction over actions commenced in state court against:

> [a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

A number of courts have refused to exercise jurisdiction in such cases. *See, e. g., Kelley v. Kelley*, 425 F.Supp. 181 (W.D.La. 1977); *Wilhelm v. United States Dept. of Air Force*, 418 F.Supp. 162 (S.D.Tex.1976). The rationale for denying jurisdiction has apparently been concern that federal courts would become entangled with ancillary domestic relations disputes and also the view that § 1442 was designed merely to protect federal officers against personal liabilities or penalties. *Wilhelm, supra*, at 165.

In this Court's view, however, the better reasoned decisions have held that actions under § 659 may be removed under § 1442(a)(1). *See, e. g., Overman v. United States*, 563 F.2d 1287 (8th Cir. 1977); *Williams v. Williams*, 427 F.Supp. 557 (D.Md. 1976). In *Overman* the Eighth Circuit noted the broad construction given this removal statute by the Supreme Court:

> [T]he removal statute is an incident of federal supremacy, and . . . one of its purposes was to provide a federal forum for cases where federal officials must raise defenses arising from their official duties. On this view, the test for removal should be broader, not narrower, than the test for official immunity.

*Willingham v. Moran*, 395 U.S. 402, 405, 89 S.Ct. 1813, 1815, 23 L.Ed.2d 396 (1969). The *Overman* court concluded that, in responding to a garnishment under § 659, a federal disbursing officer acts in his official capacity within the meaning of § 1442(a)(1).

The district court in *Williams, supra*, undertook an extensive examination of the legislative history of § 659 and found no justification for narrowing the otherwise broad scope of § 1442:

> Thus, although not free from ambiguity, the legislative history is not inconsistent with a recognition of a distinction between original and removal jurisdiction. Further, there is no indication in either the letter or the spirit of the wording of section 659, or any provision of the Social Services Amendments of 1974 of which section 659 is a small part, which suggests that the Congress intended to alter the reach and effect of section 1442(a)(1). In that context, legislative history must be very clear indeed to cause a federal district court to interpret narrowly, rather than broadly, the combination of sections 1442(a)(1) and 659.

427 F.Supp. at 566.

In light of the broad reading given § 1442(a)(1) by the Supreme Court in *Willingham*, the restrictive approach in cases such as *Wilhelm, supra*, is not persuasive. Under the circumstances, to provide a federal forum for removal of state actions in which federal officers or agencies raise defenses arising from their official duties seems appropriate.[1]

## WAIVER OF SOVEREIGN IMMUNITY UNDER SECTION 659

█ The substantive issue presented by this case is whether under § 659, a federal employer may be held liable for the entire debt or judgment underlying a garnishment, or whether the statute waives sovereign immunity only as to the appropriate portion of wages owed but not yet paid to a federal employee.

█ As indicated previously, § 659 allows garnishment of "moneys (the entitlement to which is based upon remuneration for employment) due from or payable by" a feder-

---

1. In a few cases, removal of garnishment actions instituted in state court under § 659 has been allowed without discussion of jurisdiction. *See Murray v. Murray*, 558 F.2d 1340 (8th Cir. 1977); *Crane v. Crane*, 417 F.Supp. 38 (E.D. Okla.1976).

al employer. The legislative history of this section reveals that it was enacted to effect a limited waiver of sovereign immunity necessitated by case law holding that sovereign immunity barred attachment or garnishment proceedings against the United States Treasury or its disbursing officers who were obligated to pay out moneys stemming from child support or alimony obligations. 1974 U.S.Code Cong. and Admin.News, pp. 8133, 8157; *see Corporation Co. of Miami v. Mikelis*, 467 F.Supp. 826 (S.D.Fla.1979).

In support of its position that sovereign immunity constitutes a complete bar in the present case, defendant relies on the reasoning adopted in *Green v. Green*, S–193–72 (Sup.Ct.Dist.Col., June 5, 1978) (unreported). The *Green* court held on similar facts that § 659 authorized garnishment only of funds presently "due and payable" to the employee. Once wages were paid to the employee, according to the court, § 659 no longer applies, even if payment was erroneous or wrongful. Finding no other statute which abrogated sovereign immunity to allow payment of the underlying debt, the court rejected plaintiff's attempt to reach government funds.

Reaching the opposite conclusion is an opinion issued by the Comptroller General of the United States at the request of another government agency. *See* Opinion of the Comptroller General of the United States, B–188654, at 595. Again on facts similar to those here, the Comptroller interpreted § 659 as expressing Congressional intent to place the government in all respects in the same position as a private employer. The Comptroller additionally asserted that if errors or omissions by federal employers could insulate agencies from garnishment liability, the purpose behind § 659 would be frustrated. Thus the Comptroller concluded that the government might be held liable for statutory penalty amounts after erroneous payment of wages, adding that this liability could be satisfied from the permanent, indefinite appropriation created by 31 U.S.C. § 724a.

In the Court's view, neither of these conflicting approaches represents the best interpretation of § 659. A proper accommodation of Congressional intent, the doctrine of sovereign immunity, and the legitimate interests of the states requires the adoption of a middle course.

In recent years courts have taken closer looks at the defense of sovereign immunity and have viewed statutory waivers of immunity more liberally. *See, e. g., May Dept. Stores Co. v. Smith*, 572 F.2d 1275 (8th Cir. 1978); *Quarles Petroleum Co. v. United States*, 551 F.2d 1201 (Ct.Cl.1977); Wright & Miller, *Federal Practice and Procedure*, § 3654. The restrictive position taken by the court in *Green v. Green* not only ignores this modern trend, but also allows governmental negligence to frustrate Congressional intent. It seems doubtful that Congress intended to allow government employers who fail to honor garnishments to escape liability at the expense of individuals in need of alimony and child support.

Section 659, on the other hand, must be viewed as a "limited" waiver of sovereign immunity. Plaintiff's theory in this case, under which the government would be potentially liable for several thousand dollars for failure to honor a relatively small wage garnishment, cannot be reconciled with even the most liberal construction of a statute which authorizes garnishment of wages "due" or "payable".

In addition, such a broad reading is unnecessary to effectuate Congress' desire to accommodate the interests of the states in alimony and child support cases. The obvious purpose underlying Tenn.Code Ann. § 26–238 is to induce satisfaction of garnishments by threatening potentially recalcitrant employers with a potential penalty in excess of the amount of the garnishment. In other words, the statute seeks not only to penalize any attitude of carelessness on the part of employers, but also to deter intentional refusals to honor garnishments.

Here a garnishment was overlooked through inadvertence. While this negligence may constitute a problem of some significance, the penalty provision is exces-

sive and inappropriate under these circumstances, particularly in the absence of a clearer expression of Congressional intent to authorize the payment of such penalties.

█ A reasonable accommodation of the statutory language and the competing interests in this case requires a finding that § 659 abrogates sovereign immunity to the extent of lawful garnishments, whether or not the government complies with its obligation to withhold. Thus the government is liable for any funds it failed to withhold, plus interest. Although this money is no longer "due" or "payable" to the employee, it was payable at the time of the garnishment and rightfully belonged to plaintiff through the operation of § 659. Having in effect transferred funds which it did not have a right to transfer, defendant must make restitution. This amount, as noted by the Comptroller, can be satisfied from the fund created by 31 U.S.C. § 724a.

To implement its decision, the Court directs the United States to compute and inform the Court of the amount that would have been captured in the three months immediately following January 10, 1979, had the garnishment of that date been honored. This figure shall be provided within thirty (30) days from the entry of this Order, plus lawful maximum interest.

In addition, defendant is to take any and all available steps to recover from its employee the sums awarded by the state court to plaintiff. Defendant should report to the Court its efforts in this regard within thirty (30) days.

It is so ORDERED this 7th day of February, 1980.