**FIRST VIRGINIA BANK, Plaintiff,**

v.

**Vera RANDOLPH,**

and

**United States of America, Department of State, Defendants.**

**Civil Action No. 95–0919(PLF).**

United States District Court,
District of Columbia.

March 29, 1996.

Arnold D. Bruckner, Bruckner & Bruckner, Greenbelt, MD, for plaintiff.

Claire M. Whitaker, Assistant United States Attorney, Washington, DC, for USA, Dept. of State.

Dudley E. Thompson, Jr., Klein & Cutler, Washington, DC, for Vera Randolph.

## MEMORANDUM OPINION

PAUL L. FRIEDMAN, District Judge.

This collection action began in 1982 in the Superior Court of the District of Columbia, where First Virginia Bank obtained a judgment for a commercial debt against Vera Randolph, an employee of the Department of State. At the time, the wages of federal employees were not subject to garnishment for commercial debts. First Virginia made several attempts to execute on the judgment obtained against Ms. Randolph, but was only able to recover a portion of the debt.

In another attempt to recover the debt from Ms. Randolph, First Virginia revived the judgment by an Order of Revival entered by the Superior Court on February 14, 1994, pursuant to the Hatch Act Reform Amendments of 1993, 5 U.S.C. § 5520a. The Hatch Act Reform Amendments for the first time permitted creditors to obtain garnishment of the wages of federal employees for commercial debts. With the revived judgment in hand, First Virginia filed a Writ of Attachment on the federal government to act as garnishee, and the Department of State began garnishing Ms. Randolph's wages on or about April 1, 1994. First Virginia began to receive bi-weekly payments from the federal government in the amount of $200.83.

On or about November 21, 1994, the federal government received notice from Ms. Randolph that she had filed a Motion to Quash the garnishment of her wages. In response, the Department of State terminated the garnishment by ceasing to withhold sums from Ms. Randolph's wages and halting the bi-weekly payments to First Virginia. First Virginia Bank received its last payment on December 27, 1994, at which time $4,368.25 plus interest remained outstanding on Ms. Randolph's debt.

Ms. Randolph retired from the Department of State on December 30, 1994. On January 19, 1995, she received a final paycheck for her last forty hours of work, her unused annual leave and an early-out bonus, totaling $17,563.50. After that payment, the federal government no longer held any funds belonging to Ms. Randolph and no longer owed her any money. On April 28, 1995,

First Virginia filed a Motion for Judgment of Recovery against the government, seeking a portion of the final payment it already had made to Ms. Randolph.

■ Subsequent to Ms. Randolph's retirement and the filing of the motion for judgment of recovery against the federal government, Ms. Randolph's Motion to Quash the garnishment was denied as moot. Superior Court Judge Ellen Huvelle reasoned that since Ms. Randolph was retired and the government no longer held any funds owed to her, the Writ of Attachment was no longer in effect. On May 15, 1995, the federal government removed the action for Judgment of Recovery from the Superior Court of the District of Columbia to this Court.[1]

■ The government filed a motion to dismiss this action pursuant to Rules 12(b)(1) and (6), Fed.R.Civ.P., or, in the alternative, for summary judgment pursuant to Rule 56, Fed.R.Civ.P. First Virginia opposed the government's motion and filed a cross motion for summary judgment.[2] The Court grants plaintiff's cross-motion for summary judgment and denies defendant's motion for summary judgment.

## DISCUSSION

The Hatch Act Reform Amendments of 1993, 5 U.S.C. § 5520a, for the first time, allowed the garnishing of the wages of federal employees to satisfy commercial debts.[3] Under the Hatch Act Reform Amendments, state or local law controls the garnishment of wages. 5 U.S.C. § 5520a(a)(3).

The parties disagree on both the meaning of District of Columbia garnishment law and the meaning of the Hatch Act Reform Amendments. The government argues that when an employer is given notice of a motion to quash a garnishment, District of Columbia garnishment law does not require an employer to continue to withhold sums from its employee's paycheck. Thus, it contends, the employer cannot be held liable for failing to withhold those wages. The government also insists that, even if it has misinterpreted District of Columbia law and a private employer in the District of Columbia would be held liable in such circumstances, the Hatch Act Reform Amendments do not waive sovereign immunity with respect to such claims.

First Virginia argues that District of Columbia garnishment law requires an employer to continue to withhold percentages from its employee's wages until any pending motion to quash the garnishment is resolved. Thus, the failure to withhold such sums is a breach of a statutory obligation and renders the employer liable for the amount it wrongly failed to withhold. Further, First Virginia claims that the federal government is not exempt from liability since the Hatch Act Reform Amendments provide that the federal government is subject to legal process in the same manner and "to the same extent as if the agency were a private [employer]." 5 U.S.C. § 5520(a)b.

The resolution of this dispute turns on two questions. First, whether District of Columbia law imposes on a private employer a continuing duty to withhold the appropriate percentages from an employee's garnished wages, notwithstanding notice of a Motion to Quash the garnishment, and, if so, the extent of its liability for failing to withhold the proper amount. Second, assuming such a continuing duty, whether the government has waived sovereign immunity with respect to claims against it for failure to withhold the specified amount.

1. A garnishment action under District of Columbia law is a civil action susceptible to removal pursuant to 28 U.S.C. § 1442(a)(1). *See Nationwide Investors v. Miller*, 793 F.2d 1044, 1045 (9th Cir.1986).

2. Rule 56 provides for judgment as a matter of law where there are no genuine issues of material fact in dispute. The parties agree to all the material facts in this case thus the only disputes relate to questions of law. A motion for summary judgment is particularly appropriate if the claim turns on a legal, not a factual, question. *Dorman v. Satti*, 678 F.Supp. 375, 379 (D.Conn.), *aff'd*, 862 F.2d 432 (2nd Cir.1988), *cert. denied*, 490 U.S. 1099, 109 S.Ct. 2450, 104 L.Ed.2d 1005 (1989).

3. Prior to the Hatch Act Reform Amendments, the garnishment of federal employees' wages was only permissible for child support and alimony payments pursuant to 42 U.S.C. § 659.

### A. The Duty to Withhold Wages

■ Under District of Columbia law, an employer upon whom a writ of attachment is served shall *"withhold and pay"* to the judgment creditor the percentages to which it is entitled until the "attachment is wholly satisfied." D.C.Code § 16–573(a) (emphasis added). The next subsection of the Code provides that:

> [u]pon written notice of any court proceeding attacking the attachment or the judgment on which it is based, the employer shall make no further payments to the judgment creditor or his legal representative until receipt of an order of court terminating the proceedings; except that, in the case of child support judgments, the employer shall continue to withhold the payments from the judgment debtor until receipt of an order of the court terminating the withholding.

D.C.Code § 16–573(b). The question is whether the recipient of such a notice is required to continue to withhold payments from the judgment debtor even though it is no longer permitted to make payments to the judgment creditor. The Court has been unable to locate any relevant District of Columbia cases interpreting these provisions.

The government argues that the final clause of section 16–573(b), "except that, in the case of child support judgments, the employer shall continue to withhold . . . ," means that the duty to continue to withhold wages in the face of a motion attacking the garnishment continues only in child support cases. The Court disagrees with the government's position.[4]

First, Section 16–573(a) explicitly directs the withholding *and* the payment of wages to a creditor pursuant to an attachment; Section 16–573(b) affirmatively discontinues only the payment aspect of that obligation when there is an attack on the attachment: "[u]pon written notice . . . the employer shall make no further payments. . . ." It does not discontinue the duty to withhold wages. With-

out statutory language terminating the duty to withhold, the Court concludes that the obligation to withhold wages persists despite a motion to quash the garnishment.

Second, the child support clause, which was added to the D.C.Code in 1985, does not negate the employer's duty to withhold wages in non-child support cases; instead, it emphasizes the obligation to continue such withholding in child support cases. There is no indication in the language of the 1985 child support amendment that it was intended to change the meaning of the unamended portion of the statute.

■ Finally, the government's position on the construction of the D.C. garnishment statute is inconsistent with the policy behind and purpose of a garnishment. A writ of garnishment is designed to prevent the garnishee "from prematurely disposing of any assets belonging to the judgment debtor that come into the garnishee's hands at any time prior to the resolution of the garnishment proceeding." *Cocco v. Merchants Mortgage Co.*, 69 Md.App. 68, 516 A.2d 596, 598 (1986) (citations omitted). Thus, the garnishee has a duty to withhold the attached assets "until the entry of a judgment in the garnishment action." *Fico, Inc. v. Ghingher*, 287 Md. 150, 411 A.2d 430, 437 (1980); *Marvins Credit, Inc. v. Westinghouse Elec. Supply Co.*, 130 A.2d 777, 780 (D.C.1957) (when funds are impounded under an attachment, they come under the control and supervision of the court, and accordingly there can be no 'release' of the attachment so as to render the proceeding moot without a proper court order) (citing 5 Am.Jur. *Attachment & Garnishment*, § 658 (1936)); *Mandel v. Lofton*, 89 A.2d 880, 881 (D.C.1952) (where there is an appeal of a quashed attachment, "pending the appeal the garnishee was bound to retain the money in his hands.") (citing *Bryan v. Duncan*, 19 D.C. (8 Mackey) 379 (D.C.1890)); 38 C.J.S. *Garnishment* § 181 (1943) ("the garnisher's lien or right continues during the

---

4. Indeed, it seems that even Ms. Randolph disagrees with the government's position. Ms. Randolph's attorney, in a letter to the Department of State notifying it of the Motion to Quash the garnishment, instructed the Department that ac- cording to section 16–573(b), "you are required to cease payments to First Virginia Bank." The letter did not instruct the Department to stop withholding money from Ms. Randolph's wages.

period the writ is in effect, which ordinarily is until the final disposition of the case...."").

The Court finds the reasoning of these authorities persuasive and entirely consistent with the plain language and purpose of Section 16–573 of the D.C.Code both before and after its amendment. Allowing pending motions to quash a garnishment to terminate an employer's duty to withhold wages pursuant to an attachment would clash with public policy as well as with the mandate of the statute.

### B. Liability for Failing to Withhold Wages

■ An employer who fails to withhold monies from its employee's wages after receiving notice of a Motion to Quash the garnishment becomes liable to the judgment creditor for failing to meet its obligation. D.C.Code § 16–575.[5] In *Metropolitan Roofing and Sheet Metal Co. v. Franklin Investment Co.*, 256 A.2d 913, 915 (D.C.1969), the District of Columbia Court of Appeals explained that an employer is not liable for failing to garnish wages if, at the time the writ of attachment is received, the employer owes no wages to the judgment debtor and no additional wages become due prior to the termination of employment. On the other hand, if additional wages do become due between receipt of the writ of attachment and termination of employment, it follows that the employer is liable for failing to withhold wages. In such a situation, the employer would be subject to garnishment. *See Household Finance Corp. v. Training Research and Development, Inc.*, 316 A.2d 850, 852 (D.C.1974) (the garnishment statute "provides for a continuing levy against a judgment debtor's wages until the judgment is satisfied."). Thus, the Court concludes that under District of Columbia law a private employer would be liable to a creditor for the

amount it failed to withhold from a judgment debtor's wages prior to the final disposition of a Motion to Quash the garnishment. D.C.Code §§ 16–573, 16–575.

### C. The Effect of the Hatch Act Reform Amendments

■ Prior to the Hatch Act Reform Amendments, except in a few specific cases, "sovereign immunity prevent[ed] the creditor of a federal employee from collecting a debt through a judicial order requiring the United States to garnish the employee's salary." *Franchise Tax Board of California v. United States Postal Service*, 467 U.S. 512, 516–17, 104 S.Ct. 2549, 2552, 81 L.Ed.2d 446 (1984) (citing *Buchanan v. Alexander*, 45 U.S. (4 How.) 20, 11 L.Ed. 857 (1846)). First Virginia contends that Congress waived sovereign immunity with the Hatch Act Reform Amendments which provide, in relevant part, that "pay from an agency to an employee is subject to legal process in the same manner and to the same extent as if the agency were a private person." 5 U.S.C. § 5520a(b).[6] The federal government insists that it has not waived its immunity and thus cannot be liable in the same manner as a private employer who fails to withhold properly.

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued...." *Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981). Waivers of sovereign immunity must be "construed strictly in favor of the sovereign," and not "enlarge[d] beyond what the language [of the statute] requires." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983). The Court concludes that the Congress waived sovereign immunity from suit in passing the Hatch Act Reform Amendments of 1993.

---

**5.** Section 575 provides:

If the employer-garnishee fails to pay to the judgment creditor the percentages prescribed in this subchapter of the wages which become payable to the judgment debtor for any pay period, judgment shall be entered against him for an amount equal to the percentages with respect to which the failure occurs.

**6.** "Pay" means any compensation received for personal services, but does not include awards for making suggestions. 5 U.S.C. § 5520a(a)(4). In addition, any other compensation pay, including lump-sum leave payments, is "pay" within the meaning of the Hatch Act. 5 C.F.R. § 582.102(e) (1995). "Legal process" is a "writ, order, summons or other similar process in the nature of garnishment ..." 5 U.S.C. § 5520a(a)(3).

The relevant portion of the Hatch Act Reform Amendments and implementing regulations explicitly state that monies owed as wages to a federal employee are subject to the same legal process "as if the agency were a private person." 5 U.S.C. § 5520a(b); 5 C.F.R. § 582.101 (1995). The government contends that this language is intended to treat federal *employees* the same as private *employees,* and not federal *employers* the same as private *employers.* But the statute and regulation explicitly state that an agency is to be treated "as if the *agency* were a private person" (emphasis added). This language waives sovereign immunity by placing the federal government on the same plane as a private employer with respect to garnishment of employees' wages.

■ The Hatch Act Reform Amendments do contain certain express limits on the waiver of sovereign immunity, for example to protect the government from claims filed by its employees claiming wrongful garnishment. 5 U.S.C. § 5520a(g).[7] There is no express exception from liability to a judgment creditor for the government failing to withhold the required amounts from an employee's wages. In fact, the regulations adopted pursuant to the Hatch Act Reform Amendments assume that the government is liable in cases such as this one because they provide that where the government wrongly determines not to honor legal process, but corrects its initial determination or is required to do so by a court, the agency will not "be required to pay more than if it had originally honored the legal process." 5 C.F.R. § 582.305(g) (1995). Although obviously only the Congress, not the Office of Personnel Management through regulations and administrative interpretations, can waive sovereign immunity, such implementing regulations must be given "controlling weight, unless they are arbitrary, capricious, or plainly contrary to the statute." *United States v. Morton,* 467 U.S. 822, 834, 104 S.Ct. 2769, 2776, 81 L.Ed.2d 680 (1984) (deciding the extent of immunity regarding child support and alimony payments).

The Court's interpretation is also consistent with that given to virtually identical language in an analogous statute providing for garnishment of unpaid child support and alimony. *See* 42 U.S.C. § 659. That statute provides that pay "shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments." 42 U.S.C. § 659(a). While there are not many cases interpreting the relevant language in Section 659(a), the most persuasive authority indicates that a private employer who wrongfully fails to withhold wages can be held liable for such failure, and that the language in 659(a) waives sovereign immunity and allows the federal government to be liable as well.

In *Young v. Young,* 547 F.Supp. 1 (W.D.Tenn.1980), the government was found to have inadvertently overlooked a garnishment. The court stated

§ 659 abrogates sovereign immunity to the extent of lawful garnishments, whether or not the government complies with its obligation to withhold. Thus the government is liable for any funds it failed to withhold, plus interest. Although this money is no longer "due" or payable to the employee, it was payable at the time of the garnishment and rightfully belonged to the plaintiff through operation of § 659. Having in effect transferred funds which it did not have a right to transfer [the government] must make restitution.

*Id.* at 5. *See also Loftin v. Rush,* 767 F.2d 800 (11th Cir.1985) (despite the strict construction regarding sovereign immunity, the government is liable for funds it should have withheld pursuant to an attachment). As the Court said in *DeTienne v. DeTienne,* 815 F.Supp. 394, 397 (D.Kan.1993), "[r]eturning to 42 U.S.C. § 659(a), the court finds the language which imposes liability 'in like manner and to the same extent as if the United States ... were a private person[ ]' ... means that the question of whether such

**7.** All other exceptions in the Hatch Act Reform Amendments concern the type of pay that is garnishable and caps on the amount that may be garnished. 5 C.F.R. § 582.103 (1995).

moneys will be subject to legal process is to be determined in accordance with state law in like manner as if the United States were a private person."

Only one court has held that the language of Section 659(a) is not a waiver of sovereign immunity regarding claims against the government for failing to withhold the amounts specified in an attachment. *See Green v. Green*, 106 Daily Wash.L.Rep. 1201 (Sup.Ct. D.C.1978). The result in *Green*, however, runs counter to the plain language of the statute as well as to the policy underlying it. It would permit through garnishment the recovery of child support or alimony from a federal employee delinquent in payments, but deny any means to enforce such a judgment if the government failed to uphold its legal obligation. The outcome in *Green v. Green* neutralizes the very purpose of Section 659. "[I]t allows governmental negligence to frustrate congressional intent." *Young v. Young*, 547 F.Supp. at 4. The Court rejects the reasoning of *Green v. Green* and instead accepts the analysis in *Young* and its progeny.

## CONCLUSION

At the time that Ms. Randolph's Motion to Quash the garnishment was filed, a valid writ of attachment was in effect. During the period between the filing of the motion to quash and Ms. Randolph's retirement, the Department of State owed monies to Ms. Randolph. Since the Motion to Quash the garnishment did not relieve the government of its duty to withhold the requisite amount from Ms. Randolph's wages, the government is liable to First Virginia Bank for the amount that it failed to withhold.

There is some discrepancy in the parties' papers concerning the proper amount of damages to be awarded to First Virginia Bank. Accordingly, First Virginia is directed to file, on or before April 12, 1996, a declaration describing the proper calculation of damages. The United States may respond to First Virginia's calculation on or before April 26, 1996. A separate order will be issued this same day granting First Virginia Bank's motion for summary judgment. Final judgment will be entered after the receipt of the papers concerning the proper calculation of damages.

SO ORDERED.