FIRST VIRGINIA BANK, Appellee,

v.

Vera RANDOLPH, Defendant,

United States of America and U.S.
Department of State,
Appellants.

No. 96–5205.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 24, 1997.

Decided April 11, 1997.

Robert D. Kamenshine, Washington, DC,
Attorney, U.S. Department of Justice, ar-
gued the cause for appellants. With him on
the briefs were Frank W. Hunger, Assistant

Attorney General, and William G. Kanter, Deputy Director. Eric H. Holder, Jr., U.S. Attorney, Claire M. Whitaker and R. Craig Lawrence, Assistant U.S. Attorneys, entered appearances.

Mark L. Booz, Atlanta, GA, argued the cause and filed the briefs for appellee First Virginia Bank. Kathleen T. Barlow entered an appearance.

Before: WILLIAMS, HENDERSON, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

May a judgment creditor recover damages against the United States for its wrongful failure to garnish the wages of a government employee who is a judgment debtor? That issue, and a jurisdictional question, are presented in the government's appeal from the district court's award of $385.71 in "damages" to First Virginia Bank.

## I

The State Department began garnishing the wages of its employee, Vera Randolph, in March 1994 after it was served with a writ of attachment. The Bank obtained the writ from the Superior Court of the District of Columbia. The garnishment provision of the Hatch Act Reform Amendments of 1993, 5 U.S.C. § 5520a(b), subjects the pay of federal agency employees to legal process "in the same manner and to the same extent as if the agency were a private person." District of Columbia law requires an employer served with a writ of attachment to "withhold and pay" to the judgment creditor a percentage of the employee's gross wages until the "attachment is wholly satisfied." D.C.CODE § 16-573(a) & (a)(2).

In November 1994, nine months after the garnishment began, Randolph notified the State Department of her filing of a motion in Superior Court to quash the writ. The State Department then stopped garnishing her wages in light of D.C. CODE § 16-573(b). This local law states that whenever the employer receives "written notice of any court

proceeding attacking the attachment or the judgment on which it is based, the employer shall make no further payments to the judgment creditor or his legal representative until receipt of an order terminating the proceedings; except that in the case of child support judgments, the employer shall continue to withhold the payments from the judgment debtor until receipt of an order of the court terminating the withholding."

Shortly after notifying the State Department of her motion, Randolph retired from federal service. The Superior Court thereafter declared her challenge to the writ of attachment moot because the State Department was no longer paying her any wages. First Virginia Bank—whose judgment against Randolph remained unsatisfied—filed a motion against the State Department to recover the portion of Randolph's wages the Bank would have received if the government had continued garnishing them, as the Bank claimed it should have. The government responded by removing the case to the federal district court.

On cross-motions for summary judgment, the district court ruled that the State Department had wrongfully ceased garnishing Randolph's pay. No matter that Randolph had filed a motion to quash the writ of attachment. As the district court saw it, the State Department had misinterpreted D.C. CODE § 16-573(b). The garnishment should have continued while Randolph litigated her motion. The court viewed § 16-573(b) as relieving employers only of their duty to pay the withheld wages to the judgment creditor, not to stop withholding a percentage of the employee's wages. *First Va. Bank v. Randolph*, 920 F.Supp. 213, 216–17 (D.D.C.1996). (The government has decided not to contest this ruling.)

In seeking a monetary award against the State Department for its failure to withhold part of Randolph's wages, the Bank relied upon D.C.CODE § 16-575: if "the employer-garnishee fails to pay to the judgment creditor the percentages ... of the wages which become payable to the judgment debtor for any pay period, judgment shall be entered against him for an amount equal to the percentages with respect to which the failure

occurs." The government invoked sovereign immunity to shield it from liability under § 16–575, but the district court held that the Hatch Act amendment, by subjecting the federal government to the same legal responsibilities as private employers, waived the government's immunity. *First Va. Bank,* 920 F.Supp. at 218. Accordingly, the court awarded the Bank $385.71 in "damages," an amount representing $75.71 in the outstanding principal on Randolph's debts and $310.00 in costs.

## II

█ Before argument, we ordered the parties to file supplemental briefs addressing the question whether this court or the Federal Circuit had jurisdiction over the appeal. The so-called little Tucker Act gives district courts and the Court of Federal Claims concurrent jurisdiction of any "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1346(a)(2). Under 28 U.S.C. § 1295(a)(2), the Federal Circuit has exclusive jurisdiction over appeals in non-tax cases in which the district court's jurisdiction "was based, in whole or in part" on the little Tucker Act.

The presence, or absence, of our appellate jurisdiction thus depends on what occurred in the district court. If the district court's jurisdiction did not rest in whole or in part on the little Tucker Act, we have jurisdiction over the government's appeal. Both parties think the appeal is properly before us, but for different reasons. The government's main point is that little Tucker Act jurisdiction could not have existed because the Bank failed to satisfy one of the conditions for invoking it—namely, that the substantive law, here the Hatch Act Reform Amendments, 5 U.S.C. § 5520a(b), "can fairly be interpreted" to mandate compensation from the government for the damage the Bank incurred. *United States v. Mitchell,* 463 U.S. 206, 217, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580

(1983). To rule on the government's contention would draw us close to the merits and so we will pass over it for the moment. There are other reasons for sustaining our appellate jurisdiction.

█ Even if a substantive law mandates compensation from the government, a claimant will need to show that the United States has consented to the suit. This showing is considered a prerequisite to jurisdiction; if the government has not consented to the suit, sovereign immunity requires the court to dismiss the action for lack of jurisdiction. *United States v. Mitchell,* 463 U.S. at 212, 103 S.Ct. at 2965. Because sovereign immunity is thus "jurisdictional," the little Tucker Act can be viewed as conferring "jurisdiction" in two respects. The Act vests the district courts with concurrent subject matter jurisdiction over specified claims against the government not exceeding $10,000. The Act also gives the district courts (and the claims court) "jurisdiction" by waiving the government's sovereign immunity. *Id.*

█ Litigants seeking damages from the United States for statutory violations often have no choice but to base their lawsuits on the little Tucker Act. If the substantive statutes on which they rest their damage claims do not waive sovereign immunity (or do not consent to suit, which amounts to the same thing), plaintiffs have to use the waiver contained in the Tucker Act. But there are cases in the district courts—this is one of them—in which the plaintiff decides not to rely on the little Tucker Act, cases in which the plaintiff rests on some other provision of federal law for the requisite governmental consent to suit. Such cases are not based, wholly or partly, on the little Tucker Act and appeals from the judgments of the district courts are to be heard in the regional courts of appeals, not the Federal Circuit. *See Vietnam Veterans of Am. v. Secretary of the Navy,* 843 F.2d 528, 533–34 (D.C.Cir.1988). We once described this category of lawsuits as comprising claims "brought under statutes that independently confer jurisdiction upon the district court and waive sovereign immunity for money claims against the United States." *Van Drasek v. Lehman,* 762 F.2d 1065, 1068 (D.C.Cir.1985).

The statement in *Van Drasek* does not mean that the waiver of sovereign immunity itself "independently confer[s] jurisdiction." Nor does it mean that the substantive provision the government allegedly violated must "independently confer jurisdiction." There may be a separate provision waiving sovereign immunity (and in that sense, conferring "jurisdiction"), but subject matter jurisdiction still must be established. Here that was accomplished through 28 U.S.C. § 1331, the provision vesting the district courts with jurisdiction over cases arising under federal law. The Bank's action qualifies as such a case because it arises under the Hatch Act Reform Amendments. As to the other jurisdictional prerequisite—sovereign immunity—the Bank claimed, and the district court agreed, that the Hatch Act amendments waived the government's immunity. *See First Va. Bank*, 920 F.Supp. at 217–18. Both of the conditions mentioned in the statement from *Van Drasek* were therefore present: the district court had subject matter jurisdiction under 28 U.S.C. § 1331, and the claimant invoked only a provision other than the little Tucker Act for the waiver of sovereign immunity. The Bank's action in the district court was therefore not "based" on the little Tucker Act; indeed, at no point in the proceedings did the Bank even mention the little Tucker Act. *See Kidwell v. Department of the Army*, 56 F.3d 279, 283 (D.C.Cir.1995); *Western Securities Co. v. Derwinski*, 937 F.2d 1276, 1280–81 (7th Cir. 1991). As a result, appellate jurisdiction is in this court.

### III

On the merits, there are two potential issues. The first is whether the Hatch Act amendments gave the Bank a cause of action against the government. The second is whether, if it did, the amendments waived the government's sovereign immunity from the sort of damage action the Bank brought here. As the Supreme Court discussed in *United States v. Mitchell*, these are analytically distinct questions. 463 U.S. at 218–19, 103 S.Ct. at 2968–69. If federal substantive law did not mandate compensation from the government for the Bank's damages, the question of sovereign immunity drops out of

the case. *See United States v. Morton*, 467 U.S. 822, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984).

■ In light of the government's failure to argue the point, we will assume the State Department should have continued withholding a percentage of Randolph's wages despite her motion to quash. D.C.Code § 16–575 renders private employers strictly liable when they wrongfully fail to pay a judgment creditor the percentage of an employee's wages subject to garnishment. *See Landahl, Brown & Weed Assocs. v. Houston*, 404 A.2d 934, 935 (D.C.1979); *Household Fin. Corp. v. Training Research & Dev., Inc.*, 316 A.2d 850, 852 (D.C.1974). Still, it does not necessarily follow that federal law requires the government to compensate the Bank. That depends on the effect of 5 U.S.C. § 5520a(b). Does this language in § 5520a(b)—"pay from an agency to an employee is subject to legal process in the same manner and to the same extent as if the agency were a private person"—make the United States liable to a judgment creditor for wrongfully failing to garnish an employee's wages?

The first, and nearly decisive point, is that under § 5520a(b) it is only the employee's "pay" that is made "subject to legal process." The Bank's motion in the D.C. Superior Court was not for Randolph's pay, or any part of it. Once the employee leaves government service, as Randolph has, there is no longer any "pay from an agency to an employee" that can be subject to legal process. Any amount the Bank recovered would come not from the annual appropriation for State Department salaries and expenses (*see, e.g.,* Omnibus Consolidated Appropriation Act, 1997, Pub.L. No. 104–208, § 101(a), 110 Stat. 3009 (1996) (fiscal year 1997)), but from the "general appropriation of funds" set aside for the purpose of satisfying judgments against the United States. *Office of Personnel Management v. Richmond*, 496 U.S. 414, 431, 110 S.Ct. 2465, 2475, 110 L.Ed.2d 387 (1990); *see* 31 U.S.C. § 1304. In awarding $385.71 to the Bank, the district court was not ordering the government to remit part of Randolph's pay. It was ordering the government to give other money to the Bank as damages. Noth-

ing in § 5520a(b) speaks to that sort of recovery against the United States. True enough, § 5520a(b) subjects the employee's pay to the same legal process as if the employing agency were a private entity. But this cuts against the Bank, not in favor of it. The statute defines "legal process" to mean "any writ, order, summons, or similar process in the nature of a garnishment, that ... orders the employing agency of such employee to withhold an amount from the pay of such employee, and make a payment of such withholding to another person, for a specifically described satisfaction of a legal debt of the employee." 5 U.S.C. § 5520a(a)(3) & (a)(3)(B). The Bank's action against the government was not "in the nature of a garnishment," and it was not an action ordering the government "to withhold an amount from the pay" of an employee.[1] The Bank itself characterizes its claim as one sounding in tort, for wrongful conversion we suppose.[2] Supplemental Brief for Appellee First Virginia Bank at 2–4. In short, by subjecting the pay of federal employees to the legal process applicable to private employers, § 5520a(b) incorporates the D.C. law requiring employers to withhold a percentage of the employees' wages, but it does not subject the United States to damage actions by judgment creditors.

Our interpretation of § 5520a(b) is not inconsistent with the holding of *Loftin v. Rush*, 767 F.2d 800, 808–09 (11th Cir.1985), on which the district court relied in awarding damages to the Bank. *Loftin* dealt with a different issue under a statute subjecting the pay of government employees to garnishment for unpaid child support and alimony. The commercial garnishment statute before us and the child support statute (42 U.S.C. § 659(a)) are similar. *Loftin* reached the court of appeals in the following posture. In February 1984, Pamela Loftin had a "summons of garnishment" from a Georgia court served on the United States Navy, her ex-husband's employer. The ex-husband had failed to pay the child support ordered in a 1974 divorce decree and, by 1984, owed Loftin nearly $38,000. *Loftin*, 767 F.2d at 801. Under Georgia law, the Navy had 45 days to answer the summons. *Id.* After this period lapsed, Loftin obtained—again pursuant to Georgia law—a default judgment against the Navy for the full amount due to her from her ex-husband, that is, $38,000. *Id.* In the meantime, the Navy began garnishing the ex-husband's pay at the rate of about $460 per month. *Id.* at 802. The Navy tendered its first check in June 1984. *Id.* The principal issue before the court of appeals was whether the child support statute subjected the government to liability to Loftin for the $38,000. *Id.* at 808. The court, following an analysis comparable to ours but framed in terms of sovereign immunity, held that only "moneys due a federal employee at the time" the government is served with legal process "are subject to superimposed state garnishment laws." *Id.* at 809. Therefore, "Congress determined that the government could act as a collection agent in certain cases, but"—here is the critical part for our pur-

---

1. A regulation of the Office of Personnel Management states:

   Where an agency initially determines that legal process should not be honored, if it subsequently determines that its initial determination was erroneous, it may correct its initial determination and honor the legal process. If an agency corrects an error or is required to do so by a court or other authority, under no circumstances will the agency be required to pay more than if it had originally honored the legal process.

   5 C.F.R. § 582.305(g). This does not change our reading of § 5520a(b). The regulation does not purport to set forth an interpretation of § 5520a(b) and it is, in any event, ambiguous. It could mean that an agency may make up for the amount that it erred in not withholding by deducting further sums from the employee's pay.

If that practice is followed, nothing in our opinion would warrant changing it. *See also infra* note 3.

2. The Bank tells us that it would have an action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), if negligence on the part of a government officer resulted in the failure to garnish the employee's wages. Supplemental Brief for Appellee First Virginia Bank at 2–4. The government also acknowledges that "judgment creditors might have a remedy under the Federal Tort Claims Act," Brief for Appellants at 14 n.8. We express no view on the question. There is no indication that the Bank exhausted administrative remedies before seeking recovery from the government. *See Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 371 (D.C.Cir.1997).

poses—"created no right of action against the government for moneys owed by its employees to third parties." *Id.* We give a similar interpretation to § 5520a(b).[3]

In sum, we hold that § 5520a(b) does not permit the Bank to recover damages from the United States for its failure to garnish the wages of its employees. We therefore do not need to consider whether the government waived its sovereign immunity from such actions.

*Reversed.*

---

**3.** At the end of its opinion, the *Loftin* court directed the government "to pay over to Loftin the money it should have withheld from February to June" 1984. 767 F.2d at 810. This order was unaccompanied by any legal analysis. Given the court's statements earlier in the opinion that only the employee's pay is subject to legal process, the court must have supposed that the government could recoup the judgment by making deductions from the ex-husband's future Navy paychecks, something that could not be done here because Randolph is no longer employed at the State Department.