NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 29 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DANIEL FARRELL,

Plaintiff-Appellant,

v.

BOEING EMPLOYEES CREDIT UNION;
MOORE BREWER & WOLFE, a
Professional Corporation,

Defendants-Appellees.

No.    17-15951

D.C. No. 5:16-cv-02711-NC

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Nathanael M. Cousins, Magistrate Judge, Presiding

Submitted October 12, 2018[**]
San Francisco, California

Before:  TASHIMA and MURGUIA, Circuit Judges, and CHATIGNY,[***] District
Judge.

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]    The Honorable Robert N. Chatigny, United States District Judge for
the District of Connecticut, sitting by designation.

Plaintiff-appellant Daniel Farrell initiated this unfair debt collection suit against defendants-appellees Boeing Employees Credit Union ("BECU") and Moore Brewer & Wolfe ("MBW") claiming that they had improperly garnished his wages from federal employment. BECU and MBW garnished Farrell's wages pursuant to a California state court judgment arising from a motor vehicle financing agreement. Farrell was a resident of California when the judgment entered. His wages were garnished after he moved to Indiana and then Texas. The District Court granted summary judgment to BECU and MBW and denied Farrell's cross-motion for summary judgment. Farrell appealed.[1]

Farrell raises two arguments on appeal. First, he argues that the statute permitting the garnishment of federal employees' wages, 5 U.S.C. § 5520a, applies only to garnishment for "commercial debts" and thus does not apply to garnishment for "consumer debts" such as the one at issue here. Second, he argues that the statute requires the garnishor to comply with the garnishment laws of the state where the debtor currently resides such that BECU and MBW could not

---

[1] Farrell also filed a Motion for Judicial Notice regarding the Defense Finance and Accounting Service's website. Granting the motion in part, we take judicial notice "of the existence of the website in the public realm, but decline[] to notice that the contents of the website are true." *Farrell v. Boeing Emps. Credit Union*, No. 16-cv-02711-NC, 2017 WL 1508993, at *3 n.1 (N.D. Cal. Apr. 26, 2017) (citing *Spitzer v. Aljoe*, No. 13-cv-05442-MEJ, 2016 WL 3275148, at *4 (N.D. Cal. June 15, 2016); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1029 (C.D. Cal. 2015)).

2

garnish his wages after he moved to Indiana and then Texas without first domesticating the California judgment in those states.

We assume the parties' familiarity with the facts and procedural history. We review the District Court's ruling on cross-motions for summary judgment *de novo*. *Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 970 (9th Cir. 2011). We affirm the District Court's ruling on the first issue but vacate and remand on the second issue for the District Court to conduct a more complete analysis in the first instance.

Farrell's argument that § 5520a limits the garnishment of federal employees' wages to "commercial debts" and does not permit garnishment for "consumer debts" like his is unpersuasive. The statute does not suggest such an exclusion. Rather, it states broadly that "pay from an agency to an employee is subject to legal process in the same manner and to the same extent as if the agency were a private person." 5 U.S.C. § 5520a(b).[2]

Farrell correctly observes that the garnishment statute's enabling regulations are titled "Commercial Garnishment of Federal Employees' Pay." 5 C.F.R. pt. 582. However, in issuing the final rule, the Office of Personnel Management

---

[2] Upon signing § 5520a into law, President Clinton labeled it as a "provision for the garnishment of Federal pay to repay private debt." Statement on Signing the Hatch Act Reform Amendments of 1993, 2 Pub. Papers 1696, 1696 (Oct. 6, 1993).

3

clarified that the use of the word "commercial" was intended to contrast "commercial" debt with debt related to child support and alimony, not with "consumer" or "retail" debt:

> An association of collection attorneys commented that in the collection world there are two major areas: *commercial* and *retail*[,] with *commercial* referring to the collection of debts from firms and *retail* referring to collection from consumers. While we appreciate the fact that our terminology is not consistent with the nomenclature used by some private attorneys, we have determined that no other term would be as generally understood as the term *commercial* for the purpose of distinguishing garnishment actions under this part from garnishment actions based on child support and alimony obligations.

60 Fed. Reg. 13027, 13028-29 (Mar. 10, 1995). This distinction was necessary because prior to the enactment of § 5520a, the federal government's waiver of sovereign immunity as to the garnishment of its employees' wages was limited to garnishment for child support and alimony payments. *See Hadley-Mem'l Hosp. v. Kynard*, 981 F. Supp. 690, 692 (D.D.C. 1997); *see also Franchise Tax Bd. of California v. United States Postal Serv.*, 467 U.S. 512, 516-17 (1984) ("[U]nless waived, sovereign immunity prevents the creditor of a federal employee from collecting a debt through a judicial order requiring the United States to garnish[] the employee's salary." (citation omitted)). We therefore affirm the District Court's ruling that § 5520a encompasses the type of debt at issue in this case.

Farrell's argument that § 5520a requires compliance with the garnishment laws of the state of the debtor's residence appears to present an issue of first

impression.  In rejecting this argument, the District Court relied solely on the lack of an explicit domestication requirement in § 5520a and 5 C.F.R. pt. 582.  We conclude that a more complete analysis is necessary.  Accordingly, we vacate the District Court's judgment on the second issue and remand for the District Court to conduct a complete analysis of the domestication issue in the first instance.

On remand, as part of its analysis, the District Court will need to consider the following:

First, the potential applicability of Ind. Code Ann. § 34-54-11-1 and Tex. Civ. Prac. & Rem. Code Ann. § 35.003, since, under § 5520a, the garnishment process is governed by state law.  *See* 5 U.S.C. § 5520a(3)(A) (defining "legal process" as "any writ, order, summons, or other similar process in the nature of garnishment" that is "issued by a court of competent jurisdiction within any State, territory, or possession of the United States, or an authorized official pursuant to an order of such a court or pursuant to State or local law"); *First Virginia Bank v. Randolph*, 110 F.3d 75, 79 (D.C. Cir. 1997) ("[B]y subjecting the pay of federal employees to the legal process applicable to private employers, § 5520a(b) incorporates . . . D.C. law . . . .").

Second, the lack of a clear statutory mandate allowing for interstate garnishment of federal employees' wages in the commercial debt context, in contrast to the family law context.  *See* 42 U.S.C. § 666(b)(9) (allowing for

interstate garnishment for the enforcement of child support and alimony obligations).

And third, the amount of deference, if any, owed to the Office of Personnel Management's view that wage garnishment orders issued by one state may be enforced in other states without any need to register the judgment. *See* 60 Fed. Reg. at 13028 (rejecting a comment raising "a possible constitutional question" related to interstate enforcement under 5 C.F.R. pt. 582).

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

The parties will bear their own costs on this appeal.