2000 OK CIV APP 49

**In the Matter of the ESTATE OF Betty Louise SQUIRE, Deceased,**

**and**

**In the Matter of The Betty Louise Squire Trust**

**No. 91,897.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 22, 1999.

Rehearing Denied Jan. 21, 2000.

Certiorari Denied April 4, 2000.

Denzil D. Garrison, Bartlesville, Oklahoma, and W. Robert Wilson, Pawhuska, Oklahoma, For Appellants.

Jerry M. Maddux, Bartlesville, Oklahoma, and Bruce W. Robinett, John M. Keefer, Bartlesville, Oklahoma, For Appellees.

## OPINION

CARL B. JONES, Chief Judge:

¶ 1 This will contest involves a "pour over" will and a revocable trust executed by Betty Louise Squire six years before her death. The decedent had never married and was childless. The contestants to this will and trust are the decedent's first cousins. In 1990, the decedent executed a living trust naming WestStar Bank of Bartlesville, Oklahoma (Bank) as Trustee and leaving the bulk of the decedent's residuary estate to three charities: the Washington County SPCA, the American Diabetes Association and Washington County Elder Care, Inc. The decedent also executed a "pour over" will which provided that any assets remaining in the decedent's name at death would pass to the Trust for administration and distribution.

¶ 2 The first cousins filed a petition for letters of administration and determination of heirs asserting that the decedent had died intestate. WestStar filed its objection to the petition attaching the will executed by the decedent. The cousins contested the will and sought to set aside the Trust, claiming both documents to be the products of undue influence and an insane delusion. After a two-day trial, the trial court denied the cousins' petition contesting the will and trust. The cousins appeal.

¶ 3 Issues presented on review are: 1 whether the decedent had testamentary capacity at the time she executed the will and trust; 2) whether the trust and will were a product of undue influence; and 3) whether the decedent was acting under an insane delusion at the time she executed the will and trust. Probate proceedings are of equitable cognizance. While the appellate court will study the whole record and weigh the evidence, the trial court's findings will not be disturbed on review unless they are clearly against the weight of the evidence or some governing principle of law. When a will is offered for probate, the singular concern of the court is: (a) whether the will has been executed with the requisite statutory formalities, (b) whether the testatrix was competent to make a will at the time it was made, and (c) whether it was the product of undue influence, fraud or duress. The significance of this entire process is to ascertain and effectuate the decedent's intentions regarding the disposition of her property. *Matter of the Estate of Sneed,* 1998 OK 8, ¶ 8, 953 P.2d 1111, 1115.

¶ 4 The cousins assert that the decedent lacked testamentary capacity at the time she executed her will and trust. Relying on *In re Estate of Lacy,* 1967 OK 123, 431 P.2d 366, the cousins assert that the decedent made an unnatural disposition as she failed to mention the "objects of her bounty" which in this case would have been her cousins. Although *Lacy* does not hold that this alone is conclusive of no testamentary capacity, the cousins contend that coupled with this failure is the medical evidence introduced that the decedent was a mentally ill person and had been for many years.

¶ 5 Testamentary capacity exists when a person has, in a general way, the faculty to appreciate the character and ex-

tent of the devised property, comprehends the nature of the relationship between themselves and the objects of their bounty and perceives the nature and effect of the testamentary act. Whether one possesses testamentary capacity is a question of fact. When a person contests a testator's soundness of mind, the burden of persuasion rests upon that person. When a court ascertains a decedent's testamentary capacity, it is appropriate for it to consider evidence of the testator's mental capacity, appearance, conduct, habits and conversation both before and after the will is executed. *In re Estate of Lacy, supra.*

¶ 6 The record reflects that the decedent remained in her family home until approximately six months prior to her death. One of the reasons the decedent was able to stay in her home was because pursuant to the trust the Bank paid the decedent's bills and arranged for caretakers. She suffered from multiple health problems including diabetes and partial blindness. In addition, the decedent was treated for anxiety and depression by a psychiatrist in Bartlesville. In the psychiatrist's notes, references were made to a "falling out" with the decedent's cousins for various reasons during the late '80s. Approximately one month before the execution of the will and trust, the decedent was hospitalized for an insulin reaction and was confused. She was discharged to a geriatrics center until she could return to her home. At the time she executed the will and trust, October 30, 1990, she was still at the geriatrics center. The medical records reflect from October 16, 1990 to November 17, 1990, that the decedent was alert, oriented and frequently went out of the building for social activities. The record is devoid of anyone testifying that the decedent did not know her relatives, did not understand her property, or in any way appeared incompetent. After a review of the record, we find that the trial court's decision that Betty Louise Squire was possessed of testamentary capacity at the time she executed her will and trust is not clearly against the weight of the evidence.

¶ 7 Relying on *In re Estate of Maheras,* 1995 OK 40, 897 P.2d 268 and *In re Estate of Gerard,* 1995 OK 144, 911 P.2d 266,

the cousins assert that they were entitled to a presumption of undue influence. They contend that the decedent did not have independent advice and that the trust officer from WestStar used her influence over the decedent to benefit the bank. We do not agree. The Oklahoma Supreme Court held in these two cases that a two-prong test must be used to decide whether undue influence has tainted a will. First, there must be a relationship which would induce a reasonably prudent person to repose confidence and trust in another. Second, the stronger party in the relationship must have assisted in the preparation of the testamentary instrument. It is undisputed that a confidential relationship existed between the trust officer with WestStar and the decedent. However, the distinguishing factor here is that the decedent approached WestStar and requested assistance in setting up the appropriate documents to manage her affairs. In fact, the decedent brought an unsigned will document dated 1987 to WestStar to assist in drafting the trust and will. This unsigned document provided that she wanted to leave the majority of her estate to the three charities. The trust officer opined at trial that the decedent's previous attorney had drafted the unsigned will. No contradictory evidence was presented on the authorship of this unsigned will. Further, the trust officer testified that the decedent provided all instructions regarding the disposition of her assets. As previously stated, this Court will not disturb the factual findings of a trial court unless they are clearly contrary to the weight of the evidence. We find that the trial court correctly found that the will and trust were not the product of undue influence.

¶ 8 Finally, the cousins assert that the decedent suffered from an insane delusion which materially affected the execution of the will and trust. The cousins contend that the decedent believed that people were stealing from her and that her cousins were after her money. An insane delusion connotes a belief in things which do not exist and which no rational mind would believe to exist. *Winn v. Dolezal,* 1960 OK 165, 355 P.2d 859. Such a delusion is a false belief, which would be incredible in the same cir-

cumstances to the victim if she were of sound mind and from which she cannot be dissuaded by any evidence or argument. We must determine whether the decedent's condition at the time of the execution of the will and trust was such to show that the disposition which she made was caused by a delusion and but for the delusion the disposition of the property would have been otherwise. This delusion, if it existed, must have existed at the time of the execution of the will. *Lynn v. Ada Lodge No. 146*, 1965 OK 3, ¶¶ 28, 29, 398 P.2d 491, 496.

¶ 9 The cousins emphasize that until 1983 the decedent had a very good relationship with her cousins. After the decedent and one of her cousins took a trip together, the decedent began to withdraw from this relative. The discord between this cousin arose from a misunderstanding over the transfer of the decedent's funds shortly before the 1983 trip. The decedent discussed this with her psychiatrist who noted that rifts between relatives occur all the time. No notation was found in his notes referring to an insane delusion. None of her doctors ever noted on her charts that she suffered insane delusions. In fact, one doctor in 1987 specifically stated that while the patient was depressed and anxious, she did not suffer from hallucinations or insane delusions. We find that the trial court correctly found that the decedent was not suffering from an insane delusion at the time she executed her will and trust. Accordingly, the trial court is affirmed.

AFFIRMED

HANSEN, P.J., and ADAMS, J., concur.